THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOIS MOORE, Defendant-Appellant.

Third District   No. 3—89—0265

Opinion filed October 24, 1990.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

A jury convicted the defendant, Lois Moore, of attempt (second degree murder) and two counts of aggravated assault (Ill. Rev. Stat.

1987, ch. 38, pars. 8—4, 9—2, 12—2). The trial court vacated the aggravated assault convictions and imposed a seven-year sentence for the attempt (second degree murder) conviction. The defendant appeals.

According to the record, Brenda Jones testified that on September 29, 1988, she was living with Eugene Pitchford. That evening, Jones visited her sister, Eartha Hyson. As they sat outside Hyson's apartment, the defendant approached Jones and asked to talk about Pitchford. When Jones said she did not want to talk, the defendant became angry, threatened to harm her, and then put her hand in her purse. Jones jumped up and hit the defendant's arm with a chair. At the same time, Hyson tried to grab the defendant's purse.

As this occurred, a car pulled into the driveway next to the apartment house. After the defendant got into the car, Jones and Hyson began walking back to the apartment. The defendant then stated that she was going to shoot Jones. Jones turned around and saw the defendant standing about seven feet away holding a handgun. The defendant fired a shot, missing Jones, who ran around the house to the back door of Hyson's apartment. As Jones ran, she heard a second shot. After she entered the apartment, she called the police.

Eartha Hyson testified that the defendant used to live with Pitchford. Additionally, she stated that the defendant aimed at Jones when she fired the first shot. She also said that the defendant's second shot went through her screen door and lodged in the front door.

Margaret Jo Davis testified that on the night of the incident, she was riding in a car with Annie Simms when she saw Jones and Hyson fighting with the defendant. Davis pulled up, and Simms told the defendant to get into the car. Jones followed the defendant as she walked toward the car. Jones appeared to be ready to throw a chair, but Davis told her not to. The defendant then ran after Jones and Hyson. Davis did not hear any shots fired. After the defendant returned, the three drove away together.

Annie Simms' testimony was in substantial agreement with Davis' testimony.

The defendant testified that on the night of the incident, she had gone shopping in a grocery store next to Hyson's apartment building. When she came out of the store, Jones and Hyson were standing outside. The defendant and Jones then began arguing about Pitchford. Jones picked up a chair and hit the defendant four or five times. At the same time, Hyson grabbed the defendant's hair.

The defendant further testified that, while they were struggling, she heard someone call to her. She turned and saw Davis' car. After

she went to the car, she saw Jones advancing with the chair. The defendant pulled a handgun out of her purse and pointed it at Jones. When Jones was about four feet away, the defendant raised the gun and fired in the air. She said that she did not intend to shoot Jones.

The defendant further testified that Jones ran around the apartment building and Hyson ran into the apartment. Since she was still angry, she fired a shot into the door. No one was standing behind the door when she fired.

Following closing arguments, the jurors retired to deliberate. Initially, they found the defendant not guilty of attempt (first degree murder) but guilty of attempt (second degree murder) and two counts of aggravated assault. The trial court told the jurors that their verdicts were inconsistent and did not conform with the instructions. After discussing the matter with counsel, the court told the jurors that if they found the defendant not guilty of attempt (first degree murder), they should put an "X" through the attempt (second degree murder) verdict form and return it to the court. If they found, however, that the State had proved the elements of attempt (first degree murder), they should then consider whether the defendant was guilty of attempt (second degree murder). The court told them that if they found the defendant guilty of that offense, they should return that verdict form and place an "X" through the attempt (first degree murder) form. The court then returned the signed verdict forms for the murder counts and sent the jurors back to deliberate.

While the jurors were deliberating, they sent out a note with the following question:

> "If we intend to find the defendant guilty of first degree attempt murder (including guilty of second degree attempt murder), should we cross out the signed form stating that the defendant is not guilty of attempt first degree murder?"

By agreement of the parties, the court answered "Yes." Thereafter, the jury returned the not guilty form for attempt (first degree murder) with an "X" through it. They also returned a verdict form finding the defendant guilty of attempt (second degree murder).

At the sentencing hearing, the trial court vacated the aggravated assault convictions. It then sentenced the defendant to a seven-year term of imprisonment for attempt (second degree murder).

The defendant first argues on appeal that her conviction for attempt (second degree murder) should be reversed because there is no such offense under Illinois law. She states that in order to have attempted a crime, she must have intended to commit a specific offense. (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a).) She also notes that to be

convicted of second degree murder, she must have acted under a sudden and intense passion resulting from serious provocation by the victim. (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(1).) The defendant concludes that her conviction should be reversed because it is impossible to specifically intend a sudden and intense passion.

The defendant relies on *People v. Weeks* (1967), 86 Ill. App. 2d 480, 230 N.E.2d 12, where the court held that there was no crime of attempt (voluntary manslaughter) based on a sudden and intense passion. The basis for the court's opinion was that it is impossible to specifically intend a sudden and intense passion.

The voluntary manslaughter provision construed in *Weeks* defined the offense as follows:

> "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation ***." Ill. Rev. Stat. 1965, ch. 38, par. 9—2.

■■ ■ By contrast, under the present law, to find a defendant guilty of second degree murder based on a sudden and intense passion, the jury must first find that all of the elements of first degree murder apply. (See Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).) After finding the existence of those elements, the jury must then consider whether the defendant acted under a sudden and intense passion resulting from serious provocation. (See Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a)(1).) Consequently, a finding of guilty of attempt (second degree murder) now requires a finding that the defendant had the specific intent to kill, but that her conduct was mitigated by provocation. The intent element is unrelated to the mitigating factor of provocation. We therefore find that the defendant could be convicted of attempt (second degree murder).

The defendant next argues that she was not proved guilty beyond a reasonable doubt, because the State failed to show that she had the intent to kill Jones. She contends that if she had intended to kill Jones, she would have done so, because they were standing at close range.

■■ ■ The intent to kill may be inferred from the character of the assault, the use of a deadly weapon, the issuance of threats, and the circumstances surrounding the incident. (*People v. Anderson* (1982), 108 Ill. App. 3d 563, 439 N.E.2d 65.) Moreover, the question of intent is for the trier of fact. (*People v. Migliore* (1988), 170 Ill. App. 3d 581, 525 N.E.2d 182.) On review of a conviction, this court will examine all of the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the defendant

guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

▪ The State presented evidence establishing that the defendant had a motive to harm Jones. It also presented testimony showing that at close range the defendant aimed a gun at the victim and fired it. Viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found that the defendant intended to kill Jones.

The defendant next argues that her conviction should be reversed because the jurors initially found her not guilty of attempt (first degree murder). Relying on *People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233, she argues that this finding constituted an acquittal of attempt (second degree murder) and, therefore, the trial court should have ended deliberations at that point.

▪ A trial court has a duty to review the verdict and determine if it is proper in form and substance. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.) Where the verdicts are inconsistent, a court may properly refuse them and send the jury back to deliberate after clarifying the instructions. *Almo,* 108 Ill. 2d at 64, 483 N.E.2d at 207.

▪ We do not read *Frias* as barring the actions taken by the trial court. Rather, we find that the court acted properly in refusing to accept the initial verdicts and in sending the jury back with clarified instructions. The first verdict was legally inconsistent because the jury had to find all of the elements of attempt (first degree murder) present in order to find the defendant guilty of attempt (second degree murder). (See Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—2(a).) The instructions failed to state, however, what should be done with the attempt (first degree murder) verdict form if the jury found the defendant guilty of attempt (second degree murder). The court's further instructions properly clarified the jurors' apparent confusion. Consequently, we find no error.

The defendant further argues that the trial court erred in instructing the jury on the justifiable use of force. At the instructions conference, the State submitted the standard IPI jury instruction on justification, which read as follows:

> "A person is justified in the use of force when and to the extent that she reasonably believes that such conduct is necessary to defend herself against the imminent use of unlawful force.
>
> However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to herself or another." (Il-

linois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981).)

The defendant submitted a modified form of the instruction, omitting the word "reasonably" before the word "believes" in both paragraphs. The trial court gave the State's version of the instruction.

The defendant contends that under the authority of *People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260, the trial court should have given her version of the instruction. In *Reagan*, the supreme court held that there was no crime of attempt (voluntary manslaughter) based on an unreasonable belief of self-defense. The defendant submits that *Reagan* holds that a person who attempts to kill with the belief that she is acting in self-defense, even if the belief is unreasonable, does not have a specific criminal intent. Consequently, the defendant further argues, such a person cannot be convicted of either attempt (first degree murder) or attempt (second degree murder). She therefore concludes that to reflect the state of the law, the instruction should have excluded the word "reasonably."

■■ Initially, we note that the trial court should give the IPI instruction unless it finds that it does not accurately state the law. (*People v. Glass* (1984), 128 Ill. App. 3d 869, 471 N.E.2d 597.) Moreover, the decision to give a pattern instruction is within the trial court's discretion. *People v. Finley* (1977), 49 Ill. App. 3d 26, 363 N.E.2d 871.

■■ *Reagan* dealt specifically with the question of whether there was such an offense as attempt (voluntary manslaughter) based on an unreasonable belief of self-defense. The opinion did not address the instant issue, and we do not interpret its reasoning to apply to this case. (See *People v. Powell* (1989), 180 Ill. App. 3d 315, 535 N.E.2d 1008.) Additionally, we note that the statutory definition of the justifiable use of force requires that the person reasonably believe that force was necessary to defend herself. (Ill. Rev. Stat. 1987, ch. 38, par. 7—1.) The trial court's instruction reflected this definition. Accordingly, we find the court did not abuse its discretion in refusing the defendant's instruction.

In her final argument, the defendant notes that the trial court considered as an aggravating sentencing factor that her conduct was the result of a "mild" form of provocation. She contends that this was error because her offense, by definition, was the result of serious provocation.

■■ It is unnecessary to remand for resentencing where it can be determined that the weight placed on an allegedly improper aggravating factor was so insignificant that it did not result in a harsher sentence. (*People v. White* (1986), 114 Ill. 2d 61, 499 N.E.2d 467.) In the

instant case, the trial court stated that the most serious aggravating factor was the defendant's 20 previous convictions. It only referred to the "mild" provocation in passing. Although we do not agree with this characterization, we find that the court placed such little weight on it that it is not necessary to remand for resentencing.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.