THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD FLAUGHER, Defendant-Appellant.

Fourth District   No. 4—91—0796

Opinion filed August 13, 1992.—Rehearing denied September 14, 1992.

Curtis L. Blood, of Collinsville, for appellant.

Charles H. Burch, State's Attorney, of Hardin (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On August 3, 1990, a two-count indictment was returned in the circuit court of Calhoun County charging defendant Ronald Flaugher with the offense of attempt (first degree murder) (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a)(1)) committed on July 8, 1990, against two separate victims. The first count named defendant's brother Thomas Flaugher as the victim and the second count named Thomas' wife, Dorothy Flaugher, as the victim. After a jury trial, the court entered judgment on August 5, 1991, on a verdict finding defendant guilty on both counts. Subsequently, the court sentenced defendant to two consecutive terms of 15 years' imprisonment. Defendant has appealed. We affirm.

Defendant makes no claim that the evidence was insufficient to support the verdict but asserts that the evidence was sufficiently balanced that several errors, either singularly or as accumulated, require a new trial. He contends those errors arose from (1) a misunderstanding by the court of the operation of the *Montgomery* rule (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695); (2) admission of testimony of defendant's post-arrest silence after receiving *Miranda* warnings; (3) perjury of State's witness Thomas Flaugher, discovered after the trial; (4) refusal of the court to permit defendant to call the prosecutor as a witness; (5) improper closing argument by the prosecutor; (6) the submission of a confusing set of instructions to the jury; and (7) ineffective assistance of counsel. We hold that (1) defendant was not deprived of his right to effective assistance of counsel, (2) the evidence was not evenly balanced, and (3) any errors committed were neither singularly nor in combination such as to warrant the grant of a new trial.

Defendant admits that on July 8, 1990, during a dispute, he intentionally fired a shotgun at the two victims and hit them. He also admits he then fired a pistol at Thomas and missed him. Defendant contended at trial that the seriousness of his conduct was sufficiently mitigated by provocation that he was only guilty of attempt (second degree murder) (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—2(a)(1)). He contends that the provocation arose from a series of events culminating in the July 8 episode in which he shot the two victims.

In 1985 or 1986, defendant and Thomas purchased real estate in Granite City. In 1988 or 1989, they sold one-half of the interest in that real estate and purchased land in Calhoun County which had constituted two adjacent farms. One was called the Becker farm and, at times, Thomas had stayed there. The other was called the Meyer farm and defendant and his family had stayed there. The deeds to the property had been drafted in such a way that Thomas, defendant, and defendant's wife Donna Flaugher each owned an undivided one-third interest in the property. Thomas violently objected to this division, contending he was entitled to a one-half interest. Defendant maintained the division was fair because he had made a greater monetary contribution to the purchase price.

The dispute between Thomas and defendant had become so acute that, according to Thomas, defendant had told him that he, defendant, would kill him if he came on the land. Thomas also testified that defendant had once shot at him and missed when he did come on the land. Thomas admitted he once told defendant the title question should have been straightened out and, if somebody was killed in the dispute, "it is going to be" defendant. Another sore point between defendant and Thomas occurred when Thomas became angry at defendant's son for riding a four-wheeler on a hill on the Becker farm and hit the boy, knocking him from the four-wheeler. Evidence indicated further threats between the brothers ensued after this incident. Some witnesses testified that Thomas had become so involved with his disputes with defendant that they questioned his mental stability.

The specific dispute giving rise to the shooting concerned a wagon-type trailer, title to which was in defendant's name and in which he claimed ownership. Thomas contended he had helped build it and had some rights to it. On July 8, 1990, Thomas towed the trailer from the farm of a friend named Watters to the Becker farm. According to Thomas, he intended to pick up an air engine which was in a barn at that farm, and place it on the trailer and take it to his house and then return the trailer. Thomas testified that defendant drove up and objected to his using the trailer but he told defendant he would

return the trailer as soon as he was done and defendant left. Defendant testified he told Thomas he needed the trailer to take their father's corn picker to Missouri. Both agree that defendant then left and came back in about 15 minutes with a shotgun. Both defendant's wife Donna and Thomas' wife Dorothy had been with their husbands, but when defendant returned he was alone.

According to Thomas, when defendant returned, defendant backed his truck into the trailer, knocking the trailer off of a jack. Thomas further testified defendant then got out of his truck and stated, "I have warned you once that I'd kill you if you came back, and I'm going to kill you," whereupon defendant fired his shotgun first at Thomas, who was standing by the trailer, and then at Dorothy, who was in the cab of Thomas' truck. Both were hit. Thomas further stated that defendant then fired a pistol at him but missed him and then left. Dorothy's testimony corroborated the version given by Thomas but she stated she could not see whether Thomas had a gun in his hand when defendant fired at him.

Defendant testified that when he returned, Thomas called him names and threatened to kill him and his wife and held a gun in his left hand as he made those threats. Defendant admitted he fired at Thomas and then at Dorothy. He stated that Dorothy had her hand between the door of the cab and the windshield and he thought she had a gun. Defendant then asserted that he saw Thomas on the ground pointing a pistol at him so he fired at Thomas and then drove off. Defendant testified he then telephoned Calhoun County Sheriff Stacy Ferguson and told him he had shot Thomas and Dorothy at the Becker farm. Both defendant and the sheriff testified that before coming to the Becker farm, defendant had gone to the sheriff's house and requested the sheriff to accompany him to the Becker farm because he anticipated difficulty in getting the trailer from Thomas. The sheriff had refused to intervene in the civil dispute over the trailer.

Defendant's most serious claims of error concern (1) the contention that the circuit court misunderstood the *Montgomery* rule, and (2) the court's permitting introduction of evidence of defendant's post-arrest silence.

■ As is well known, in *Montgomery* the supreme court adopted what became Federal Rule 609 (Fed. R. Evid. 609) in regard to impeachment of a witness by proof of conviction of a crime. The essence of the rule is that the conviction must (1) be for (a) a felony or (b) a misdemeanor involving dishonesty or false statement, (2) have been entered not more than 10 years prior to use at trial, and most importantly, (3) be one which the trial judge determines to be of a probative

value that is not " 'substantially outweighed by the danger of unfair prejudice.' " (*Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698, quoting 51 F.R.D. 391.) The third aspect as stated above constituted the balancing test required under the *Montgomery* rule. *Montgomery* and its progeny make clear that similarity between the offense for which the accused is on trial and the offense conviction of which is offered for impeachment enhances the prejudice to the accused but does not absolutely bar use of the conviction. See *People v. Moore* (1978), 65 Ill. App. 3d 712, 382 N.E.2d 810; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §609.4, at 380 (5th ed. 1990).

■ Here, the court denied a defense motion *in limine* to suppress use of defendant's prior Federal convictions for conspiracy to possess and distribute in excess of five kilograms of cocaine and possession of a firearm by a felon. Defendant then admitted these convictions in his testimony in chief. In denying the motion *in limine*, the trial judge stated "[u]nfortunately, I think the Federal would be admissible 'cause it goes to the very essence of the charge here, which is attempt murder, first degree, involving a weapon." This would seem to indicate the court misapplied the balancing test under a mistaken belief that the greater the similarity between the offense charged and the impeaching offense the stronger the case for admissibility.

The court did, however, recognize the existence of the requirement for a balancing test and also stated at the time of ruling on the *in limine* motion that "[t]he fact that they're a felony doesn't necessarily qualify them for admission." Moreover, the narcotic offenses were not closely related to the attempt (murder). Even the possession of the gun conviction was not highly prejudicial to defendant. The evidence was so overwhelming that he possessed the propensity to carry a gun that the effect of the added conviction was very minor. We conclude no reversible error resulted.

In support of the trial court's ruling on the *in limine* motion, the State cites the decision of this court in *People v. Blythe* (1974), 17 Ill. App. 3d 768, 308 N.E.2d 675. There, this court held that in a prosecution for murder, the accused's prior convictions in another State for manslaughter and assault with intent to commit robbery with a weapon were properly admitted to impeach the accused's assertion that he killed in self-defense. Much of the discussion concerned the question of whether convictions for those offenses were admissible for impeachment even though they were not infamous crimes under our statutes. *Montgomery* was cited to explain that the impeaching offenses need only be felonies or certain types of misdemeanors. How-

ever, to the extent the opinion indicates that similarity between impeaching offenses and that charged is a factor supporting admissibility, the opinion is wrong and is hereby overruled.

As with our ruling concerning application of the *Montgomery* rule, we are concerned about evidence of defendant's post-arrest silence which was presented to the jury but find that no reversible error resulted. The record reveals that on direct examination Sheriff Ferguson testified that after the shooting "[Ferguson] read [defendant] his Miranda rights, and [Ferguson] asked [defendant] right there in the driveway if he wanted to tell [Ferguson] anything about the shooting or any events that led up to it, and [defendant] said, no, that he really didn't want to, that he would just wait and talk to his attorney." Subsequently, Illinois State Police Investigator Dennis Higgins testified "[h]e talked to defendant at the Calhoun County Sheriff's Department and asked him if he wanted to talk about the incident, and he said he wanted to talk to his attorney." Defense counsel neither objected to the introduction of this testimony, moved to have it stricken, nor raised the question of the propriety of the testimony in defendant's post-trial motion.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, a consolidated case, the prosecuting attorney elicited testimony from both defendants at their trials regarding their post-arrest silence and why they did not tell the police the story they were telling at trial. The Supreme Court noted that "[s]ilence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." (*Doyle*, 426 U.S. at 617, 49 L. Ed. 2d at 97, 96 S. Ct. at 2244.) The Court concluded use of the defendant's post-arrest silence violated the due process clause of the fourteenth amendment.

The State maintains the foregoing testimony was proper to show the nature of the law enforcement investigation when, as here, not accompanied by closing argument that defendant's refusal to talk further was an indication of guilt. The State cites *People v. Lindgren* (1982), 111 Ill. App. 3d 112, 443 N.E.2d 1129, and *People v. LaSumba* (1980), 92 Ill. App. 3d 621, 414 N.E.2d 1318, both decisions of this court. *LaSumba* is distinguishable. The accused had walked into a police station and told officers a body was in a motel room to which he gave them the key. Evidence was admitted of this conversation and his subsequent statement that the body was of a woman and his refusal to speak further. The opinion did not indicate any *Miranda* warnings had been given.

■ *Lindgren* was more similar to this case. One police officer testified that while that accused was in custody the accused stated he had been fishing during the night of a killing and refused to say more. Another officer testified that after the accused was read his *Miranda* rights he made a comment about fishing but refused to speak further. This court approved the introduction of the evidence as an elicitation of "a complete recitation of police procedure" not contended to be "indicative of guilt" (*Lindgren*, 111 Ill. App. 3d at 117, 443 N.E.2d at 1133). While we agree that there, as here, the introduction of the testimony of the silence of the accused after *Miranda* warnings was not reversible error, we conclude that the *proper practice is to exclude testimony of the silence of the accused when the only purpose for its admission is to show police procedure.* No substantial detriment to the State results from such a rule and judges and prosecutors should be alert to prevent such matter from getting before a jury.

Our rationale for excluding this evidence of investigative procedure is analogous to that which we expressed in *People v. Cameron* (1989), 189 Ill. App. 3d 998, 546 N.E.2d 259, concerning the introduction of hearsay evidence prejudicial to an accused which was presented merely to show investigative procedure. There, an investigator in a drug case was permitted to testify concerning (1) phone calls from an informant who stated the accused had recently purchased drugs and was intending to get rid of them because he thought he was being watched, and (2) one side of a phone conversation with an informant who allegedly arranged a purchase with the accused. We indicated that the trial court should have cut off the testimony short of allowing the damaging hearsay to get before the jury while allowing the witness to mention he had conversations with the various people involved in order to explain why he acted as he did.

This court in *Cameron* recognized that a number of appellate decisions seemed to support the actions of the trial court but determined that closer scrutiny of the details of the evidence to be admitted was required. We noted as follows:

> "A highly respected evidence text describes the theory upon which out-of-court statements are admitted to explain a course of police conduct and discusses the danger of misuse of such statements:
>
> > 'In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct. His testimony that he acted "upon information received," or words to that ef-

fect, should be sufficient. Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted. The *need for the evidence is slight, the likelihood of misuse great.*' McCormick, *Evidence* §249, at 734 (3d ed. 1984)." (Emphasis added.)

*Cameron*, 189 Ill. App. 3d at 1004, 546 N.E.2d at 263.

Here, no purpose was served by any portion of the quoted statements of the two officers. The prosecutor should not have elicited the information and defense counsel should have objected to the questions which elicited the information. However, error in admission of evidence to which no objection is made and which is not cited in a posttrial motion is usually waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Such is the case in regard to a violation of *Doyle* even where the prosecutor comments upon the impermissible evidence when the evidence is not closely balanced and the error is not such as to deprive the defendant of a fair trial. (*People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1.) As we subsequently explain, the evidence here was not evenly balanced and the circumstances of the introduction of the evidence were such that the prejudice to the defendant was minor. He admitted he had shot the two victims and the thrust of his case concerns the degree of his culpability. Evidence that he refused to talk does not imply any greater culpability than he has admitted. Admission of this evidence created no reversible error.

Defendant's claim that Thomas committed perjury at trial is based on testimony of Thomas that he had brought suit against defendant to obtain a greater interest in the Calhoun County land. This testimony would indicate that defendant had a motive to kill Thomas because of the filing of the suit. Defendant alleged in his post-trial motion that he had recently been served with process in connection with such a suit and learned then, for the first time, that Thomas had not yet filed suit when he testified at trial. The record showed that suit had not been filed at the time of trial.

Defendant maintains he was denied due process because of the incorrect statement by Thomas, which he contends must have been knowing. He relies on *People v. Cornille* (1983), 95 Ill. 2d 497, 448 N.E.2d 857, where in a post-conviction petition the defendant sought a new trial based on evidence that the expert witness in his trial presented false testimony regarding his qualifications as an expert. The *Cornille* court concluded the false testimony of the State's expert re-

garding his qualifications violated that defendant's due process rights. The court noted that to elevate an allegation of perjury to a violation of due process the defendant must establish the State was involved in the perjury. The court concluded the State action requirement was satisfied there by showing that the State failed to verify its expert witness' credentials in addition to the involvement of the State adjudicatory process. The court also noted that once State action is established the defendant is entitled to a new trial unless the State can prove beyond a reasonable doubt the false testimony was immaterial and did not lead to the conviction. The court also noted that false testimony relating only to the issue of credibility may constitute reversible error in closely balanced cases.

■ Here, unlike in *Cornille*, the filing of the complaint was of little consequence. The jury was aware of this dispute concerning the division of interest in the farmland. The inaccurate evidence that a suit had actually been filed gave only a slight increase in the weight of evidence of a motive for the shootings. The defense had almost as much reason to know whether the complaint had been filed as did the State. The inaccurate testimony was likely not wilful as Thomas had consulted an attorney and likely did not understand the procedure whereby a suit is not initiated until a complaint has been filed. The question of whether the filing had actually taken place was a detail about which we cannot strongly criticize the prosecutor for not checking. No culpability on the State sufficient to require a new trial existed here.

Defendant's discovery after trial that Thomas had not filed a lawsuit does not entitle defendant to a new trial on the basis of newly discovered evidence for many of the same reasons that the falsity of Thomas' testimony does not require a new trial.

> " 'To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence.' " *People v. Molstad* (1984), 101 Ill. 2d 128, 134, 461 N.E.2d 398, 402, quoting *People v. Baker* (1959), 16 Ill. 2d 364, 374, 158 N.E.2d 1, 6.

■ Defendant's next two claims of error concern his testimony that he went to see Charles Burch, Calhoun County State's Attorney, concerning threats Thomas had made to him and the State's Attorney refused to do anything. Prior to trial, defendant filed a list of witnesses he expected to call. The name of State's Attorney Burch was

on that list. The State objected to Burch being a witness because that would prevent him from trying the case. Defendant indicated he wanted to call Burch to establish that he came to see Burch in regard to threats which Thomas had made to him. Burch represented to the court that defendant had been to see him but the visits concerned the property dispute and not threats and that he could not get involved in that civil dispute. Burch stated he had no file indicating defendant had made any complaint.

Defendant furnished the list of witnesses less than two weeks before a scheduled trial date. As Burch argued, he would have had a difficult time finding a substitute prosecutor who could be ready for trial. Moreover, a " 'trial court has wide discretion in refusing to permit attorneys to testify at a trial wherein they also serve as advocates.' [Citation.] There is no abuse of discretion in the court's refusal where the testimony of the prosecuting attorney is not necessary for the presentation of a defense." (*People v. Rosenberger* (1984), 125 Ill. App. 3d 749, 765, 466 N.E.2d 608, 619.) Here, even if Burch would have substantiated defendant's contention that he complained to Burch because of threats from Thomas, defendant had a great deal of direct testimony in that regard from other witnesses. Proof of a self-serving statement by defendant to Burch would have added little to defendant's case. The court did not exceed its discretion in ruling as it did. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

Defendant asserts that claimed error in the circuit court's refusal to require Burch to testify was compounded when, in closing argument, Burch stated as follows:

"Now, they say, 'I went to the State's Attorney,' and [defendant] tells you, 'He denied me my constitutional rights.' What can he want me to do, put his brother off his farm? *** I can't put his brother off his farm. His brother owned every inch of that farm with [defendant] and Donna Flaugher. I had no right to take him off of that farm. That's far beyond the purview of the job of State's Attorney."

Defendant had testified Burch had denied him any help when he came to Burch's office. Defendant maintains Burch was, in effect, improperly testifying. *People v. Smith* (1990), 141 Ill. 2d 40, 565 N.E.2d 900; *People v. Ford* (1980), 83 Ill. App. 3d 57, 403 N.E.2d 512.

Defendant correctly states that the argument was improper as it was phrased in such a way that the prosecutor was giving testimony about at least some matters not in evidence. However, the matter discussed was a very minor one, as we have explained. The trial court has great discretion in passing upon the propriety of closing argu-

ment. The court acted well within its discretion in overruling objection to the State's closing argument. *People v. Morgan* (1991), 142 Ill. 2d 410, 568 N.E.2d 755.

Defendant's next claim of error concerns instructions given to the jury. Understanding this issue requires a brief review of the charges. Defendant was charged with attempting to commit the offense of first degree murder as to each of the two alleged victims. He maintains he was only guilty of attempting to commit second degree murder, which type of murder occurs pursuant to section 9—2(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)) when a person commits first degree murder as defined in subsections (1) and (2) of section 9—1(a) of the Code (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(a)(1), (a)(2)) and at the time the defendant is (1) acting under sudden and intense passion usually provoked by the person killed, or (2) possessed of unreasonable belief he is justified to act in self-defense. Here, defendant maintained he acted under sudden and intense passion resulting from provocation. Under the provisions of section 9—2(b) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(b)) he had the burden of proving that he so acted by a preponderance of the evidence.

Defense counsel admitted that Dorothy Flaugher had not done anything sufficient to provoke defendant to attempt to kill her. The court gave the State's tendered instructions in regard to the alleged offense against Thomas which defined the offense of attempt (second degree murder) and set forth the issues. Over defense objection, the court gave an instruction defining the mitigating factor of provocation "by Dorothy Flaugher" but gave no issues instruction concerning provocation that might have resulted from conduct of Dorothy Flaugher. Defendant maintains those instructions confused the jury.

■ Confusion possibly existed but we do not see how the confusion could have been prejudicial to defendant. Defense counsel admits that the evidence was insufficient to raise an issue of provocation by Dorothy. The evidence was insufficient to raise an issue that defendant fired at Dorothy intending to hit Thomas. Thus, no showing was made sufficient to permit the jury to reduce the offense against Dorothy to attempt (second degree murder). (See Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(1).) As far as the alleged offense against Thomas Flaugher was concerned, the jury was adequately instructed as to the circumstances which would mitigate those charges to attempt (second degree murder). No reversible error arose from the instructions.

■ Finally, defendant maintains he received ineffective assistance of counsel because of the failure of his counsel (1) to investigate

whether Thomas had actually filed suit against defendant, and (2) failing to object to or request instructions on post-arrest silence. The short answer to these contentions is that one of the requirements for establishing that the constitutional rights of an accused is violated in that respect is a showing of the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) Here, neither the question of whether Thomas had filed suit before the shooting nor whether defendant refused to talk to investigators had any substantial bearing on the outcome.

The evidence here was not evenly balanced. The proof was very strong. Defendant intentionally shot at both victims at least knowing he was likely to kill them. No showing of provocation by Dorothy was shown. Defendant made no claim that he believed he fired in self-defense. Defendant left the premises and returned with a gun, thus tending to negate that any passion he possessed was *"sudden* and intense" (emphasis added) as required by section 9—2(a)(1) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(1)). No combination of errors required reversal.

We affirm.

Affirmed.

COOK and LUND, JJ., concur.