(Nos. 75467, 75798 cons█

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DENIS LOPEZ, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JUAN CRUZ, Appellant.

*Opinion filed May 18, 1995.—Rehearing denied October 2, 1995.*

McMORROW, J., joined by BILANDIC, C.J., concurring in part and dissenting in part.

Rita A. Fry, Public Defender, of Chicago (Beth I. Solomon and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Timothy P. O'Neill and James N. Perlman, of Evanston, for *amicus curiae* Illinois Attorneys for Criminal Justice.

Rita A. Fry, Public Defender, of Chicago (Stephanie L. Ellbogen, Assistant Public Defender, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Arleen C. Anderson, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Timothy P. O'Neill and James N. Perlman, of Evanston, for *amicus curiae* Illinois Attorneys for Criminal Justice.

JUSTICE NICKELS delivered the opinion of the court:

These consolidated appeals present separate issues concerning the existence of the offense of attempted second degree murder in Illinois. In cause No. 75467, defendant Denis Lopez was convicted after a jury trial of attempted first degree murder and armed violence. Lopez requested an instruction on the crime of attempted second degree murder based on provocation, but the trial and appellate courts found that no such crime existed in Illinois. (245 Ill. App. 3d 41.) In cause No. 75798, defendant Juan Cruz was convicted after a jury trial of attempted first degree murder, armed

violence, and possession of a controlled substance with intent to deliver. Cruz also requested an instruction on attempted second degree murder, but based on imperfect self-defense. As in the case of Lopez, the trial and appellate courts found no such crime existed in Illinois. (248 Ill. App. 3d 473.) We granted leave to appeal in both cases pursuant to Supreme Court Rule 315 (145 Ill. 2d R. 315) and consolidated the cases for review.

## FACTS

### No. 75467

In cause No. 75467, Lopez was charged with and convicted by a jury of attempted first degree murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1) and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2) and sentenced to 25 years' imprisonment. Lopez admitted shooting his wife, Nancy Lopez, but argued that he had done so due to a sudden and intense passion due to serious provocation. Lopez and his wife had been married for 10 years and had been having marital trouble for the last two or three years. In December 1989, Lopez's wife informed him that she had been involved in an extramarital affair and that the man with whom she was having the affair was the father of their son.

Ms. Lopez informed Lopez in March 1990 that she was filing for divorce and later that month took her children and moved in with her mother. On March 22, 1990, Lopez shot his wife after she accompanied her daughter to school. Ms. Lopez survived the shooting.

The trial court refused defendant's tendered instruction on attempted second degree murder based on provocation. The appellate court, relying on *People v. Aliwoli* (1992), 238 Ill. App. 3d 602, found that the crime of attempted second degree murder does not exist in Illinois. 245 Ill. App. 3d at 44.

## No. 75798

In cause No. 75798, Cruz was charged with and convicted by a jury of attempted first degree murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1), armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2), and possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1401(b)(2)). The evidence at trial shows that Cruz was distributing drugs at a Chicago housing project when two plain-clothed policemen attempted to apprehend him. Cruz ran and fired shots at the officers, hitting both. The officers survived. Cruz admitted firing at the officers, but testified he did not hear them say "police" or see them wearing badges.

Cruz tendered an instruction on attempted second degree murder based on an imperfect self-defense, the unreasonable belief in the need to use deadly force. The trial court refused the instruction. The appellate court affirmed, relying on *Aliwoli* and the decision in *Lopez*. 248 Ill. App. 3d at 477.

### Appellate Decisions

The question before us is whether attempted second degree murder is an offense recognized in Illinois. The districts of the appellate court are split on this issue. The First District has held that no offense of attempted second degree murder exists in Illinois. (*Lopez*, 245 Ill. App. 3d 41; *People v. Aliwoli* (1992), 238 Ill. App. 3d 602 (provocation); *Cruz*, 248 Ill. App. 3d 473; *People v. Williams* (1991), 220 Ill. App. 3d 460 (imperfect self-defense).) However, the Second District (*People v. Austin* (1991), 215 Ill. App. 3d 323 (imperfect self-defense)) and Third District (*People v. Moore* (1990), 204 Ill. App. 3d 694 (provocation)) have found that such a crime does exist. The Fourth District has not addressed the issue, but has assumed that the crime exists. (See *People v. Flaugher* (1992), 232 Ill. App. 3d 864, 876 (provocation).) Finally, the Fifth District has concluded that attempted

second degree murder does not exist in Illinois. *People v. Fletcher* (1993), 255 Ill. App. 3d 206 (imperfect self-defense).

## Statutes

We begin our discussion with the pertinent statutes. The attempt statute provides:

> "A person commits an attempt when, *with intent to commit a specific offense*, he does any act which constitutes a substantial step toward the commission of that offense." (Emphasis added.) (720 ILCS 5/8—4(a) (West 1992).)

The second degree murder statute provides in pertinent part:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraph[ ] (1) *** of subsection (a) of Section 9—1 of this Code and either of the following mitigating factors are present:
>
> (1) [Provocation] At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or
>
> (2) [Imperfect self-defense] At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code [self-defense], but his belief is unreasonable." (Ill. Rev. Stat. 1987, ch. 38, par. 9—2(a).)

The first degree murder statute provides in pertinent part:

> "(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> (1) He *** intends to kill *** that individual or another ***." (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a).)

We note that because the crime of attempted first degree murder requires, and attempted second degree murder

would require if it exists, the specific intent to kill (see *People v. Barker* (1980), 83 Ill. 2d 319, 324), we limit our discussion of the murder statutes to the mental state of intent to kill.

## Attempted Voluntary Manslaughter

We begin our analysis with this court's previous holding that the crime of attempted voluntary manslaughter based upon an imperfect self-defense does not exist in Illinois. (*People v. Reagan* (1983), 99 Ill. 2d 238.) This analysis is helpful because second degree murder replaced voluntary manslaughter. (See *People v. Jeffries* (1995), 164 Ill. 2d 104, 111.) In *Reagan*, this court concluded:

"The requirement of the attempt statute is not that there be an intent to kill, but that there be an intent to kill without lawful justification. If, as suggested by the People, defendant at the time of the shooting believed the circumstances to be such that if they existed would justify the killing, then there was no intent to commit an offense.

We agree with the appellate court that 'there is no crime of attempted voluntary manslaughter under section 9—2(b). To commit an attempted voluntary manslaughter, the defendant could not merely have an intent to kill, for that is not a crime. [*People v. Barker* (1980), 83 Ill. 2d 319.] The defendant would have to specifically intend to kill with an unreasonable belief in the need to use deadly force in self-defense. As the State concedes, it is impossible to intend an unreasonable belief. If a defendant intended to kill with the knowledge that such action was unwarranted, he has intended to kill without lawful justification and could be prosecuted for attempted murder. In the case at bar, the defendant intended to defend himself. Although his belief in the need to defend himself or in the need to use deadly force was unreasonable, his intent was not to commit a crime. His intent was to engage in self-defense, which is not a criminal offense.' 111 Ill. App. 3d 945, 950-51." *Reagan*, 99 Ill. 2d at 240-41.

## Second Degree Murder

We now turn to the offense of second degree murder. The legislature amended section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—2) in 1986. This revision renamed the offense of murder and abolished voluntary manslaughter. Murder is now known as first degree murder, and voluntary manslaughter has been replaced by second degree murder. See *Jeffries*, 164 Ill. 2d at 111.

As defined by statute, second degree murder is first degree murder plus the existence of one of the two statutory mitigating circumstances. As noted in *Jeffries*, first and second degree murder are similar in that they have the same mental states. What distinguishes the two offenses is the presence of the mitigating circumstance, which reduces first degree murder to second degree murder. However, the mitigating circumstances are not elements of the crime. In fact, first and second degree murder have the same elements. Second degree murder is simply a lesser *mitigated* offense, a concept new to Illinois. *Jeffries*, 164 Ill. 2d at 122.

We further noted in *Jeffries* that for a conviction on second degree murder, the State must prove beyond a reasonable doubt the elements of first degree murder. The defendant then has the burden to prove the existence of one of the mitigating factors. The jury is instructed "not [to] consider whether the defendant has met his burden of proof with regard to second degree murder until and unless it has first determined that the State has proven beyond a reasonable doubt each of the elements of first degree murder." Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).

## Attempt

We now examine the mental state required for attempted second degree murder, if such crime were to exist. As the attempt statute provides, for a defendant

to commit an attempted offense, he must *intend to commit a specific offense*. Defendants argue that the intent required for attempted second degree murder is simply the intent to kill. The State responds that under the specific language of Illinois' attempt statute, the intent required for attempted second degree murder, if it exists, would be the intent to kill without lawful justification and with either a sudden passion or an unreasonable belief in the need to use deadly force. We agree with the State.

The *Reagan* decision is helpful here. As noted in *Reagan*, the mental state required for attempted voluntary manslaughter, if such crime existed, would not simply have been the intent to kill, but the intent to kill without lawful justification. This is because the attempt statute requires the intent to commit a specific offense, and simply intending to kill is not an offense. For example, killing in self-defense is not a crime. This court further noted in *Reagan* that a defendant intending to defend himself, although unreasonably, would not have the intent to unlawfully kill. Such a defendant would have the intent to lawfully kill using self-defense. The two different intents, intent to kill unlawfully and intent to kill in self-defense, cannot coexist in the same crime.

Turning now to attempted second degree murder, we note that the crime of attempted second degree murder would require the intent to commit the specific offense of second degree murder. Thus, the intent required for attempted second degree murder, if it existed, would be the intent to kill without lawful justification, plus the intent to have a mitigating circumstance present. However, one cannot intend either a sudden and intense passion due to serious provocation or an unreasonable belief in the need to use deadly force. Moreover, concerning the mitigating factor of an imperfect self-defense, one cannot intend to unlawfully kill while at the same

time intending to justifiably use deadly force. Thus, the offense of attempted second degree murder does not exist in this State.

Defendants, however, argue that this analysis is faulty. Defendants contend:

"Since second degree murder is first degree murder plus mitigation, it follows that attempt[ed] second degree murder is nothing more than attempt[ed] first degree murder plus mitigation. Thus, the correct analysis is first whether the defendant attempted to commit attempt[ed] first degree murder and then whether he was acting under a sudden and intense passion."

This, however, is not what the attempt statute specifies.

Attempt requires the intent to commit a specific offense, and first and second degree murder are separate offenses. While they share the same elements, second degree murder requires the presence of a mitigating circumstance, which, while not an element or mental state, does reduce the culpability and thus the sentencing range. (See *Jeffries*, 164 Ill. 2d at 121-22.) We hold that for an attempted second degree murder, the defendant must intend the presence of a mitigating factor, which is an impossibility.

We note that while defendants and legal commentators have argued (see O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209, 223; see also Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B.J. 494, 498, 511 (1987)) that the specific intent required for attempted second degree murder is simply the intent to kill, their assertion is without merit. These arguments fail to consider the specific language of Illinois' attempt statute, which plainly requires the intent to commit a specific offense, not simply the intent required to commit the predicate offense. Thus, our decision is based on the wording of our attempt statute rather than some notion of how the crime of attempt should be defined.

These arguments concerning the intent required for attempt are better addressed to the State legislature than to this court.

Finally, defendant Lopez argues that this court's failure to recognize the crime of attempted second degree murder results in the possibility that a defendant would be sentenced to a greater term of imprisonment if the victim lives than if the victim dies. Lopez notes that attempted first degree murder is a Class X felony punishable by a term of imprisonment ranging from 6 to 30 years. (720 ILCS 5/8—4(c)(1) (West 1992); 730 ILCS 5/5—8—1(a)(3) (West 1992).) However, had Lopez actually killed his wife and the jury believed he acted under a sudden and intense passion due to serious provocation, he would have been guilty of second degree murder, a Class 1 felony, which is punishable by a term of imprisonment ranging from 4 to 15 years. (720 ILCS 5/9—2(d) (West 1992); 730 ILCS 5/5—8—1(a)(4) (West 1992).) (The legislature has increased the sentencing range for second degree murder to 4 to 20 years effective January 1, 1994. (730 ILCS 5/5—8—1(a)(1.5) (West Supp. 1993).) Lopez argues that this possibility violates the Illinois Constitution's requirement that "[a]ll penalties *** be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11.

We disagree. As this court noted in *People v. Steppan* (1985), 105 Ill. 2d 310:

" 'This court has traditionally been reluctant to override the judgment of the General Assembly with respect to criminal penalties. It indicated at an early date that the constitutional command that "penalties shall be proportioned to the nature of the offense" would justify interference with the legislative judgment only if the punishment was "cruel," "degrading" or "so wholly disproportionate to the offense committed as to shock the moral sense of the community." ' (25 Ill. 2d 235, 240.)" (*Steppan*, 105 Ill. 2d at 320.)

We do not believe that the disparity in sentencing range

here is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.

Accordingly, we hold that under the Illinois attempt statute, no crime of attempted second degree murder exists. The judgments of the appellate court are affirmed.

*Nos. 75467 & 75798—Affirmed.*

JUSTICE McMORROW, concurring in part and dissenting in part:

I cannot agree with the majority's conclusion that the crime of attempted second degree murder does not exist under Illinois law. I believe that attempted second degree murder is a viable criminal offense. The failure to recognize attempted second degree murder as a criminal offense creates a void in Illinois criminal law which causes irrational and disparate treatment of defendants under certain circumstances. Also, recognition of attempted second degree murder is both logical under Illinois' new homicide statute and consistent with recent case law interpreting the statute. Further, I believe that the legislature intended that attempted second degree murder should be recognized under the new statute, as evidenced by the expressions of its drafters.

Because I believe that the crime of attempted second degree murder should be recognized in Illinois, I would reverse the conviction of defendant Cruz in cause No. 75798, and remand that case for a new trial. However, because there was insufficient evidence of provocation raised at the trial of defendant Lopez, I agree with the court that Lopez was not entitled to have the jury instructed on attempted second degree murder and that the conviction of Lopez in cause No. 75467 for attempted first degree murder should be affirmed.

The illogical and disparate treatment of certain defendants under the majority's application of Illinois' attempt and homicide statutes is demonstrated by the

following example given by a legal scholar and one of the drafters of the homicide statute:

"The scene is a tavern in Chicago on a sultry evening in June, 1981. Two friends, Kane and Abel, begin to argue. Suddenly, the argument erupts into a physical altercation. After ten minutes of intense fighting, Kane strangles Able, breaking the latter's neck. Soon thereafter, the police arrive and arrest Kane. Abel is rushed to the hospital and placed in intensive care.

After he is booked, Kane calls his lawyer. Kane voices his concern about the possibility of being charged with murder since he definitely intended to kill Abel. His lawyer responds: 'Don't worry about murder. There is no question that your actions were performed under a sudden and intense passion resulting from serious provocation. Such an action constitutes [second degree murder], which is a Class [1] felony in Illinois. If you are convicted, the worst you can get is [15] years ***. Moreover, because you have no prior criminal record, there is a possibility you could even be given probation.' An hour later, Kane's lawyer comes to visit him.

'I'm afraid I have some bad news.'

'You mean Abel died?'

'No, the bad news is that Abel did not die.'

'I don't understand.'

'If he had died, there is no question that you would have been charged with [second degree murder]. He's alive, however, and there is no such crime as attempt [second degree murder] in Illinois. You admitted you tried to kill Abel and that is attempt [first degree] murder, a Class X felony punishable by up to thirty years in the penitentiary. Moreover, because it is a Class X crime, there is no possibility of probation. Frankly, you made a terrible mistake by not making sure that you actually killed Abel.' " (O'Neill, *"With Malice Toward None": A Solution to an Illinois Homicide Quandary*, 32 DePaul L. Rev. 107, 107-08 (1982).)

The above example demonstrates that when an altercation occurs where at least one of the two statutory mitigating circumstances is present, *i.e.*, serious provocation or an unreasonable belief that deadly force is jus-

tified, the defendant is subject to a greater range of punishment if the victim lives rather than if the victim dies. This is so because if the victim lives, the defendant is guilty of attempted first degree murder, which is a Class X felony. (720 ILCS 5/8—4(c)(1) (West 1992).) If the victim dies, the defendant is guilty of second degree murder, which is a Class 1 felony (720 ILCS 5/9—2(d) (West 1992)), and which carries a lesser penalty (730 ILCS 5/5—8—1(a)(4) (West 1992)). (See, *e.g.*, *People v. Rodriguez* (1994), 258 Ill. App. 3d 579.) Additionally, if the victim dies, a defendant convicted of second degree murder may be eligible for probation; if the victim lives, a defendant convicted of attempted first degree murder cannot receive probation. 730 ILCS 5/5—5—3(c)(2)(B) (West 1992).

The majority states that this court should not interfere with the judgment of the General Assembly with respect to criminal penalties unless the disparity in sentencing is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." (166 Ill. 2d at 451, citing *People v. Steppan* (1985), 105 Ill. 2d 310.) However, I believe that the Illinois legislature intended to eliminate the disparity created by the court's failure to recognize attempted second degree murder (attempted voluntary manslaughter under the previous homicide statute), when in 1987 it amended the Illinois homicide statute. (See Steigmann, *First and Second Degree Murder in Illinois,* 75 Ill. B.J. 494, 498 (1987).) Consequently, I believe that a defendant charged with attempted murder who introduces evidence of one of the recognized factors which mitigates first degree murder to second degree murder should be allowed to have the jury instructed on attempted second degree murder. The majority's failure to recognize the crime of attempted second degree murder places such defendants in the

untenable and illogical position of being subjected to a greater range of punishment than if the victim had died. This lack of logic and fairness should not be countenanced by this court.

The problem in this case has descended from the refusal of Illinois courts to apply the attempt statute to the formerly described crime of voluntary manslaughter. (See *People v. Reagan* (1983), 99 Ill. 2d 238; see also *People v. Weeks* (1967), 86 Ill. App. 2d 480.) The Illinois legislature replaced voluntary manslaughter in 1987 with the crime of second degree murder. (Pub. Act 84— 1450, eff. July 1, 1987 (repealing Ill. Rev. Stat. 1985, ch. 38, par. 9—2).) Prior to the 1987 amendments to Illinois' homicide statute, the crime of voluntary manslaughter was defined as:

> "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation ***;
>
> * * *
>
> (b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing *** but his belief is unreasonable." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2.)

In deciding that the crime of attempted voluntary manslaughter did not exist, our courts reasoned that, under the attempt statute, the defendant must have specifically intended to commit the crime of voluntary manslaughter; that the mitigating circumstances of extreme provocation or a belief in the need for self-defense *were part of the crime of voluntary manslaughter*; and that therefore, to be guilty of attempted voluntary manslaughter, the defendant would have to intend to kill under intense passion or under the unreasonable belief in the need to use deadly force in self-defense. Because

it is impossible for a defendant to intend to act under intense passion or an unreasonable belief, the courts concluded that the crime of attempted voluntary manslaughter was not legally possible. See *Reagan*, 99 Ill. 2d at 240; *Weeks*, 86 Ill. App. 2d at 485.

However, as we recently noted in *People v. Jeffries* (1995), 164 Ill. 2d 104, 112, the crime of second degree murder replaced the crime of voluntary manslaughter and the statutory mitigating factors are not elements of the crime of second degree murder. The legislature separated the mitigating factors for second degree murder from the elements which were required to be proven by the prosecution. Subsequent to the legislative amendments, the jury now first considers whether the elements of murder have been proven beyond a reasonable doubt. It is to be noted that the elements of both first and second degree murder are identical: *viz.*, that the defendant killed another without lawful justification with either the intent or knowledge that his acts created a strong probability of death or great bodily harm. (See *Jeffries*, 164 Ill. 2d at 118.) The jury then separately considers whether one of the mitigating circumstances was present at the time of the killing. First and second degree murder are simply different degrees of the *same crime.* (See O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209, 222 (1986).) The crime of second degree murder is first degree murder plus mitigating circumstances. (See *Jeffries*, 164 Ill. 2d at 122.) Accordingly, the crime of *attempted second degree murder* is simply attempted first degree murder plus mitigating circumstances.[1]

Under the above analysis, the co-existence of at-

---

[1]I note that even before the 1987 amendments to the homicide statute, the crime of voluntary manslaughter should also have been viewed as "murder plus mitigation," because the elements of voluntary manslaughter were the same as the new crime

tempted second degree murder with the present homicide statute does not require the impossible situation that the defendant intended to act under one of the mitigating circumstances. Attempted second degree murder is a specific intent crime and the State must prove that the defendant specifically intended to kill. (*People v. Moore* (1990), 204 Ill. App. 3d 694, 698.) However, "[t]he intent element is unrelated to the mitigating factor[s] ***." *Moore*, 204 Ill. App. 3d at 698.

The majority adopts the reasoning of the *Reagan* decision to conclude that attempted second degree murder cannot exist in the circumstance where the defendant's justification for the attempted homicide is self-defense. Construing the Illinois attempt statute, which requires that the offender intend "to commit *a specific offense*" (emphasis added) (720 ILCS 5/8—4 (West 1992)), the *Reagan* court reasoned that: "The requirement of the attempt statute is *** that there be an intent to kill *without lawful justification.* If, as suggested *** [the] defendant at the time of the shooting believed the circumstances to be such that if they existed *would justify* the [attempted] killing, then there was no intent to commit an offense." (Emphasis added.) (*Reagan*, 99 Ill. 2d at 240.) In other words, if the defendant subjectively believed that his actions were necessary to defend himself, then the defendant did not "intend to commit

---

of second degree murder. (See O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209 (1986).) Consequently, the analysis in this dissent might also have applied to the crime of voluntary manslaughter. However, the commingling of the elements of voluntary manslaughter with the mitigating circumstances in the statute led courts to interpret the attempt statute as requiring the defendant to have intended both the elements of the crime and the mitigating circumstances. As noted, the redrafted homicide statute specifically separates the mitigating circumstances from the elements of second degree murder.

an offense" as required by the attempt statute, since defending oneself is not a crime. Consequently, the majority concludes that such a defendant could not be guilty of attempted second degree murder under the attempt statute. 166 Ill. 2d at 448, citing *Reagan*, 99 Ill. 2d at 240.

However, the practical result of the majority's interpretation of the attempt statute is senseless. Under the majority's analysis, in a case where the jury concludes that *the defendant subjectively believed that his use of deadly force was justified in order to defend himself*, but such belief was not reasonable, the jury must nonetheless convict the defendant of the *greater offense* of attempted first degree murder. If the defendant did not "intend to commit a specific offense" as required by the attempt statute, he is not entitled to a jury instruction on *attempted* second degree murder. The result of the majority's interpretation of the attempt and homicide statutes is that the very circumstance that should mitigate the defendant's conduct, the belief in the need for self-defense and a lack of intent to commit a specific offense, actually precludes a conviction of the lesser offense. We are bound to presume that the legislature did not intend such an absurd result. (*McDunn v. Williams* (1993), 156 Ill. 2d 288, 309.) "It is an elementary principle of statutory interpretation that no statute should be construed in a manner which will lead to consequences which are absurd, inconvenient, or unjust." (*People v. Partee* (1988), 125 Ill. 2d 24, 30-31.) I do not believe that the Illinois legislature intended such an anomaly.

The above discussion also demonstrates that a defendant who uses deadly force under extreme provocation or who has an unreasonable belief that his actions were justified is deprived of the mitigating impact of such circumstances under the majority's analysis. In

cases where the jury finds that a mitigating factor existed at the time of the altercation, if the victim survived the altercation, the jury is precluded from giving effect to the mitigating factor because attempted second degree murder is not recognized in Illinois.

That the crime of attempted second degree murder should now be recognized under Illinois law is demonstrated by the recently promulgated jury instructions addressing the new homicide statute. These instructions logically guide a jury through deliberation on attempted second degree murder. (Illinois Pattern Jury Instructions, Criminal, Nos. 6.07Y (provocation), 6.07Z (belief in justification) (3d ed. 1992) (hereinafter IPI Criminal 3d).) The instructions require the jury to initially find that the State has proved the elements of attempted first degree murder beyond a reasonable doubt, *i.e.*, that the defendant performed an act constituting a substantial step toward killing an individual with the intent to kill. Then, and only then, can the jury go on to consider the existence of a mitigating circumstance. The defendant then has the burden of proving by a preponderance of the evidence that "at the time he performed the acts which constituted a substantial step toward the killing of an individual," he either: "acted under a sudden and intense passion resulting from serious provocation" or "believed the circumstances to be such that they justified the deadly force he used, but his belief that such circumstances existed was unreasonable." IPI Criminal 3d Nos. 6.07Y, 6.07Z.

It is clear that the Illinois legislature intended that proof of the statutory mitigating factors during an altercation would reduce the defendant's culpability and punishment. (See 720 ILCS 5/9—1, 9—2 (West 1992).) It is not logical to conclude that the legislature intended the mitigating circumstances to reduce the degree of murder, but not attempted murder. Consider-

ing the amendments to the homicide statute which replaced the crime of voluntary manslaughter with second degree murder, and the comments of the drafters on the amended homicide statute, I believe that the majority's strict interpretation of the attempt statute contravenes the intent of the legislature that attempted second degree murder be recognized. See Steigmann, *First and Second Degree Murder in Illinois*, 75 Ill. B.J. 494, 498 (1987) (stating that one reason the legislature changed the name of the crime of voluntary manslaughter to second degree murder was so that the Illinois Supreme Court would recognize the crime of attempted second degree murder); O'Neill, *An Analysis of Illinois' New Offense of Second Degree Murder*, 20 J. Marshall L. Rev. 209, 223 (1986).

Some appellate court decisions have concluded that the crime of attempted second degree murder does not exist. (See *People v. Fletcher* (1993), 255 Ill. App. 3d 206; *People v. Aliwoli* (1992), 238 Ill. App. 3d 602; *People v. Williams* (1991), 220 Ill. App. 3d 460.) However, the reasoning in those decisions which recognize attempted second degree murder is more persuasive. See *People v. Austin* (1991), 215 Ill. App. 3d 323; *Moore*, 204 Ill. App. 3d 694; see also *People v. Turcios* (1992), 228 Ill. App. 3d 583.

Although I believe that the crime of attempted second degree murder should be recognized in Illinois, I do not believe that defendant Lopez was entitled to have the jury instructed on this lesser mitigated offense. The only circumstances which constitute "serious provocation" under Illinois law are substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the defendant's spouse. (*People v. Fausz* (1983), 95 Ill. 2d 535, 539.) The fact that a victim tells her husband that she has committed adultery, even when flaunting such admission, is insufficient as a mat-

ter of law to constitute serious provocation to reduce first degree murder to second degree murder. (See *People v. Chevalier* (1989), 131 Ill. 2d 66; *People v. Schorle* (1990), 206 Ill. App. 3d 748.) Thus, accepting the evidence offered by defendant Lopez that his wife informed him that she had engaged in an adulterous affair and that the child born during the marriage' was not the defendant's son, these statements by the defendant's wife did not constitute "serious provocation" causing "sudden and intense passion." Nor does the fact that the defendant's wife informed him that their divorce was final on the day of the shooting constitute "serious provocation," under Illinois law. Thus, defendant Lopez was not entitled to a jury instruction on attempted second degree murder and his conviction should be affirmed.

With regard to defendant Cruz, I would hold that the trial court erred by refusing to instruct the jury on attempted second degree murder. At the trial of Cruz, the defendant testified that the men chasing him were wearing "starter jackets" and that he believed they were members of a street gang. The defendant further testified that he saw one of the men chasing him reach in his jacket and that the man had a metal object that the defendant believed was a gun. The defendant stated that he thought the man was going to shoot him. Another witness testified that she saw the men chasing the defendant, that the men were wearing street clothes and that she did not think that the men were police officers. The record contains sufficient evidence to raise a question as to whether the defendant believed that deadly force was necessary to defend himself. Furthermore, the jury was instructed on the use of self-defense. Where the evidence supports an instruction on reasonable self-defense, the evidence must necessarily support an instruction on imperfect self-defense. (See *People v.*

*O'Neal* (1984), 104 Ill. 2d 399; *People v. Lockett* (1980), 82 Ill. 2d 546.) Therefore, I would reverse the conviction of defendant Cruz, remand cause No. 75798 for a new trial and direct the trial court to instruct the jury on attempted second degree murder.

CHIEF JUSTICE BILANDIC joins in this partial concurrence and partial dissent.