THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE SANDERS, Defendant-Appellant.

First District (1st Division)   No. 1—87—0106

Opinion filed April 8, 1991.

Randolph N. Stone, Public Defender, of Chicago (Ruth McBeth, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Monica L. Willis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a bench trial, Willie Sanders was found guilty of four counts of murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)) for killing Sidney Tate and guilty of invading Lillie Moore's home (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(1)). Sanders was sentenced to 30 years in the Illinois Department of Corrections.

At trial, Moore testified to the following: On October 10, 1984, Tate had been living with her and her two sons, Kenneth and Dwyrl, for two months at 3653 N. Federal in Chicago, Illinois. At approximately 11:30 p.m., October 10, 1984, Moore and Tate went to sleep in her bedroom while Moore's sons were asleep in their bedroom. Moore stated that about midnight, she was awakened by a smoke detector in her apartment, at which time she went into the living room and saw smoke seeping into her apartment under the front door. Thereafter,

Tate and her sons came into the living room and she called the fire department. After the fire was extinguished, the front door was charred and hanging by one hinge. At this time, Moore secured the door by latching the security chain and pushing her kitchen table and chairs against it. Around 3 a.m., Moore's sons had gone to sleep in her bedroom because there was smoke in theirs, while Moore and Tate went to sleep on the living room floor to guard the apartment and wait for someone to repair the door.

Moore stated that she was awakened again in the early morning hours of October 11, 1984, when her back was hit, at which time she rolled over, saw Sanders standing over her, and stood up. She testified that she struggled with Sanders for about 10 minutes. After fighting with Sanders, Moore ran to a friend's apartment to call the police. After the police arrived, they went into Moore's apartment and retrieved a rusty pipe that she had never seen before.

Moore's son Kenneth was 12 years old on October 11, 1984. He testified at trial to the following: He was awakened a second time in the early hours of October 11, 1984, by his mother's scream. After hearing her scream, he went into the living room, where he saw Tate and Sanders. Kenneth stated that Tate was lying on his back while Sanders was stomping Tate's head with his feet and hitting him with a pipe. At this time, he went back into the bedroom to retrieve his brother, and they both left the apartment through the living room. As he left the apartment, he saw Tate lying on the floor making choking noises. Tate's face was swollen and his face and arms were bloody. Blood was on the walls. When Kenneth saw Sanders standing over Tate hitting him with the pipe and stomping him, Sanders said, "[Y]ou think you['re] slick, I'm slicker." As the boys were leaving the apartment, they encountered two police officers who took them to Moore's friend's apartment. Lastly, Kenneth testified that the shock absorber the police found in Moore's apartment was the pipe Sanders used to hit Tate.

Moore's second son, Dwyrl, was seven years old on October 11, 1984, and also testified at the trial. His testimony was substantially similar to Kenneth's testimony.

Next, police officer Gregory Klichowski testified. Officer Klichowski stated that when he entered the apartment building, he saw Kenneth and Dwyrl; that when he entered Moore's apartment, he saw that the door was charred and hanging by a chain; and that he saw Tate lying on his back in a pool of blood with a television set on his face.

Then, police officer Richard Popovits testified. His testimony was substantially similar to Officer Klichowski's testimony. However, he also stated that he saw a car's shock absorber in the living room and that the shock absorber was a very rusty, two-foot-long metal object.

Additionally, Dr. Shaku Teas was called as a pathology expert. The doctor testified that he performed a post-mortem examination on Tate and found multiple abrasions and lacerations to the face, multiple fractures of facial bones, rib fractures and skull fractures. The doctor further testified that the cause of Tate's death was cerebral injuries due to blunt trauma, such as being hit by a blunt instrument. On cross-examination, Dr. Teas said that a television antenna could have been the instrumentality of death.

Sanders testified during his defense. He stated that he was one of Moore's boyfriends; that he had five pairs of pants, five shirts, socks, and shorts in Moore's apartment; that in 1977, he lived with Moore in his apartment, in 1980, in her apartment for three months, and from June to September of 1984 in her apartment; that he knew that Moore was seeing other men and did not like it; that he knew Moore was seeing Tate on October 11, 1984; that he did not know Moore was living with Tate; and that on October 11, 1984, he did not personally know Tate.

Further, Sanders testified to the following. On October 11, 1984, he went to Moore's apartment at 5:30 a.m. He knocked hard on Moore's apartment door, but the door fell in. He bent over, went under the door and entered the apartment. Moore was standing at the entrance of the hallway. When Moore saw him, she called for Tate. Tate lunged at Sanders with "some object" in his hand. The object hit Sanders on his shoulder and both men fell on the floor and fought. Moore reached under the mattress and retrieved a gun, but she panicked and ran out the door with the gun in her hand. Sanders stated that he was still fighting with Tate when Tate grabbed a chair and started swinging. When Sanders backed up and bumped into a television, he grabbed the television and threw it at Tate because Sanders was afraid for his life. The television hit Tate and he fell to the floor. When Tate did not get up, Sanders walked out the door. On cross-examination, Sanders denied beating Tate on October 11, 1984, and denied hitting anyone with the shock absorber.

At the close of the evidence, the trial judge found Sanders guilty of four counts of murder and one count of home invasion and sentenced Sanders to 30 years' imprisonment. Sanders appeals his conviction. We affirm.

Initially, Sanders argues that the State failed to prove beyond a reasonable doubt that he did not act in self defense, contending that "the State's evidence was *** conflicting, confused and uncertain." We disagree.

■■■ A reviewing court will not substitute its judgment for that of the trial court and will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt concerning the defendant's guilt. (*People v. McGrath* (1989), 193 Ill. App. 3d 12, 28, 549 N.E.2d 843, citing *People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889, *cert. denied* (1990), _____ U.S. _____, 111 L. Ed. 2d 796, 110 S. Ct. 3288.) When considering a defendant's challenge to the sufficiency of the evidence, a reviewing court will not retry the defendant, because determinations concerning the credibility of witnesses, the weight to be given their testimony and the reasonable inferences drawn from the evidence presented are the trial court's responsibilities when a jury is waived. (*McGrath*, 193 Ill. App. 3d at 28, citing *Jimerson*, 127 Ill. 2d at 43.) The relevant inquiry on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jimerson*, 127 Ill. 2d at 43-44.

■■ Generally, once the issue of self-defense is interposed by the introduction of some evidence (a requirement satisfied by Sanders' testimony), it becomes the State's burden to prove Sanders guilty beyond a reasonable doubt regarding self-defense as well as all other elements of the offense. (*People v. Harmon* (1990), 200 Ill. App. 3d 411, 413, 558 N.E.2d 173.) The elements of self-defense include the following:

"(1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened was unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable." (*People v. Ross* (1981), 100 Ill. App. 3d 1033, 1038, 427 N.E.2d 955.)

When, in the judgment of the trier of fact, any of the evidence presented at trial negates the existence of any one of these elements beyond a reasonable doubt, the State has carried its burden. *Harmon*, 200 Ill. App. 3d at 413, citing *People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.

■ Here, there is insufficient reason for this reviewing court to substitute its evaluation of the evidence for that of the trial court because the evidence, particularly Moore's, Kenneth's and Dwyrl's testimony, was not so improbable or unsatisfactory to create a reasonable doubt concerning Sanders' guilt. His murder conviction is affirmed.

■ Next, Sanders argues that the State failed to prove beyond a reasonable doubt that he was guilty of home invasion, because it did not prove that he entered Moore's apartment "without authority," contending that everyone in the apartment was asleep so that permission was not possible; that he knocked on the door and it caved in; and that because he had a long-standing relationship with Moore and her sons, he entered the apartment to check on their safety. Additionally, Sanders urges us not to follow the limited authority doctrine. (*People v. Hudson* (1983), 113 Ill. App. 3d 1041, 448 N.E.2d 178; *People v. Strong* (1984), 129 Ill. App. 3d 427, 472 N.E.2d 1152; *People v. Sanders* (1984), 129 Ill. App. 3d 552, 472 N.E.2d 1156.) That doctrine states that consent given for a defendant's entry is vitiated by criminal actions engaged in by the defendant after entering, thus making his entry unauthorized. (*Hudson*, 113 Ill. App. 3d at 1044-45; *Strong*, 129 Ill. App. 3d at 430; *Sanders*, 129 Ill. App. 3d at 560.) We find that Sanders' entry was not authorized. It is uncontested that he was not living with Moore on October 11, 1984; that he had not lived with her in her apartment since September of 1984; and that neither Moore nor Tate gave Sanders permission to enter Moore's apartment. Moreover, assuming that Sanders had authority to enter Moore's apartment to check on her and her sons' safety, it became vitiated when he began a series of criminal activities which ended with Tate's murder. The home invasion conviction is affirmed.

For the reasons set forth above, Sanders' murder and home invasion convictions are affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.