THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIE RODRIGUEZ, Defendant-Appellant.

First District (2nd Division)    No. 1—92—2224

Opinion filed February 8, 1994.—Modified on denial of rehearing March 29, 1994.

Arthur E. Engelland, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Louie Rodriguez, appeals his convictions of attempted first degree murder and aggravated battery, asking this court to review whether (1) the State proved him guilty of those offenses beyond a reasonable doubt; (2) his conviction of attempted first degree murder should be reduced to attempted second degree murder or aggravated battery; and (3) this court should remand for resentencing if it reduces his conviction of attempted first degree murder. For reasons which follow, we affirm.

At 7 p.m. on Saturday evening, April 13, 1991, James Shortall and Craig Niedermaier, college baseball players in Chicago, went to a local bar and grill on West Taylor Street in Chicago to watch a televised hockey game. Other baseball players and Shortall's girl friend were there. Shortall drank two beers and four sodas; Niedermaier did not drink.

At 1:30 a.m., Shortall's girl friend went up to the bar for last call and was harassed by three Hispanic men. Shortall approached his girl friend to pull her away, and one of the three men told him to "mind [his] own business and take a hike." Shortall told them to mind their own business and leave him alone, at which point he returned to his table.

As the three men left the bar, one of them intentionally bumped Shortall and asked him if he had a problem. Shortall said he had not thought so; they asked him to step outside. Shortall left the bar a few minutes later, at closing time. He told police he left with the intention of discussing the matter outside. Once outside, one of the three men pushed Shortall. Shortall hit him four or five times. They wrestled for a couple of minutes until the other two men broke up the fight.

About 30 people were standing outside the bar. Shortall was just standing there when a girl from the crowd threw a beer bottle at him, striking his right ear. Someone then "sucker-punched" Shortall in the mouth and ran away. Shortall, one of his friends, and "a bunch of other people from the neighborhood" chased this individual. At this point, 200 people had gathered outside the bar and several fights broke out between four or five university students and about 20 people from the neighborhood.

A tall, unidentified man, accompanied by defendant, stopped Shortall and asked him if he wanted to fight someone else one-on-one. Defendant stood three feet away from Shortall but did not make

any threatening physical or verbal gestures. When Shortall declined the fight, the tall man shoved Shortall with one hand and was, in turn, attacked by some men whom Shortall did not know. Shortall resumed the chase of the man who sucker-punched him, hit him a few times, and knocked him to the ground.

When Shortall finished fighting and stood up, he was struck with a knife on the right side of his neck and received a 10- to 12-inch cut lengthwise. Shortall was stabbed four times from behind and, after he turned to face his attacker, whom he identified as defendant, he was stabbed twice more. Shortall suffered the 10- to 12-inch cut on his neck, a 10-inch cut on the back, a two-inch cut on the arm, a four- to five-inch cut on the elbow, a three-inch cut on the stomach, and a three-inch cut on the chest. Shortall pushed defendant to the ground and walked away when he realized he was covered with blood. He saw defendant running away and, for the first time, observed a knife with a three- or four-inch blade in defendant's right hand. Defendant was waving the knife in the air shouting, "This is my equalizer." Shortall and his friends had no contact with defendant before Shortall was stabbed.

Aaron Carpenter, a university student who did not know Shortall and his companions, had 10 to 15 drinks at the bar. At closing time, he witnessed a girl throw a beer bottle at Shortall and another individual sucker-punch him in the face. He joined Shortall in the chase of Shortall's attacker when three neighborhood men, including defendant, kicked and punched him. Daniel Baroncelli, who is 6 feet 2 inches tall and weighs 190 pounds, ran over and grabbed Carpenter, an acquaintance. Baroncelli threw a punch at one of Carpenter's attackers and turned to run away. As he turned, defendant cut him from his ear to his mouth on the left side of his face.

Defendant testified that on April 13, 1991, he met friends for drinks at the bar and grill and had three or four glasses of wine. At closing time, he observed college students beating Ernesto Hidalgo. Defendant, who is 5 feet 5 inches tall and weighs 140 pounds, attempted to break up the fight when Shortall and Baroncelli hit him over the head with a bottle. He ran away and 8 to 10 people carrying broken beer bottles chased him. The crowd was saying, "Get him, get him." When they caught defendant, he "whipped" out a "little pocketknife" and "started swinging because [he] was scared." He was trying to defend himself. He was swinging the knife in front of him but did not recall stabbing anyone. Eventually, he ran away through an alley. He threw the pocketknife down because he became nervous. The pocketknife had a $1^1/_2$-inch blade. Defendant's attackers were larger than he was. Defendant told his attackers to stay away from him and Hidalgo because they "had had enough."

On cross-examination, defendant denied saying, "I got the great equalizer." Defendant acknowledged that he sliced Shortall in the back, claiming that Shortall was charging at him, presenting his back first. Defendant's injuries consisted of bumps and "plenty of bruises."

Three other witnesses, Cindy Scalfano, Ricardo Lara, and Ernesto Hidalgo, testified and corroborated defendant's claims.

After the bench trial, defendant was found guilty of attempted first degree murder of Shortall and of five counts of aggravated battery; he was acquitted of two counts of armed violence and of attempted first degree murder of Baroncelli. The circuit court sentenced him to concurrent terms of six years' imprisonment for attempted first degree murder of Shortall and four years' imprisonment for aggravated battery of Baroncelli, with the remaining counts merged. Defendant appeals.

I

Defendant initially contends the State failed to prove beyond a reasonable doubt that his conduct was unjustified.

A

Defendant claims that he reasonably believed the use of force was necessary in defense of his person.

A reviewing court will not substitute its judgment for that of the circuit court nor will it set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt concerning defendant's guilt. (*People v. McGrath* (1989), 193 Ill. App. 3d 12, 28, 549 N.E.2d 843.) When considering a challenge to the sufficiency of the evidence of defendant's guilt, a reviewing court will not retry defendant. Determinations concerning the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence presented are responsibilities of the circuit court at a bench trial. (*McGrath*, 193 Ill. App. 3d at 28.) The relevant inquiry on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 453.

Generally, once the issue of self-defense is interposed by the introduction of some evidence, the State has the burden of proving beyond a reasonable doubt that defendant did not act in self-defense. (*People v. Sanders* (1991), 212 Ill. App. 3d 773, 777, 571 N.E.2d 836; *McGrath*, 193 Ill. App. 3d at 26.) Self-defense is raised when evidence

is presented showing that (1) unlawful force was threatened against defendant; (2) defendant was not the aggressor; (3) the danger of harm was imminent; (4) defendant actually believed that (a) a danger existed, (b) the use of force was necessary to avert the danger, and (c) the kind and amount of force used was necessary; and (5) defendant's belief was reasonable. (*People v. Harmon* (1990), 200 Ill. App. 3d 411, 413, 558 N.E.2d 173; *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1022, 415 N.E.2d 499.) The use of deadly force is limited to those situations in which the threatened force will cause death or great bodily harm or the force threatened is a forcible felony. (*People v. Anderson* (1992), 234 Ill. App. 3d 899, 906, 601 N.E.2d 831.) The State has carried its burden if the trier of fact determines that the State has negated any one of these elements beyond a reasonable doubt. *People v. Seiber* (1979), 76 Ill. App. 3d 9, 13, 394 N.E.2d 1044.

Here, defendant testified that he observed college students beating a man from the neighborhood. When defendant tried to break up the fight, Shortall and Baroncelli hit him over the head with a bottle. Defendant ran away and 8 to 10 people carrying broken beer bottles chased him. They were larger than defendant. When they caught him, defendant whipped out a little pocketknife and "started swinging because [he] was scared." He was trying to defend himself. Other defense witnesses corroborated defendant's testimony. Defendant presented sufficient evidence to raise the issue of self-defense; therefore, the State had the burden of negating an element of self-defense beyond a reasonable doubt.

The State correctly notes that the trier of fact is not required to believe defendant's exculpatory testimony; rather, it must consider the evidence as a whole, weighing all of the circumstances of the incident and the testimony of other witnesses in assessing the plausibility of defendant's version of the events. (*People v. Crespo* (1983), 118 Ill. App. 3d 815, 818-19, 455 N.E.2d 854.) The State claims the circuit court reasonably could have concluded that defendant's testimony was incredible because several witnesses did not see defendant in the bar that night and because defendant did not sustain serious injuries despite his claim to have been hit with a bottle. Further, defendant's testimony on cross-examination that Shortall was charging at him, back first, is incredible.

Defendant argues that the State's own evidence, along with the defense evidence, showed that university students, including Shortall and Baroncelli, were participating in a brawl with neighborhood men and that defendant reasonably believed the use of force was necessary in defense of his person. Defendant correctly notes that Shortall had a confrontation inside the tavern with an unidentified neighbor-

hood man, which turned into an altercation outside the tavern. Defendant was not present or involved in the confrontation or the initial altercation. The State does not contest these points. It is also undisputed that several fights broke out between four or five university students and about 20 neighborhood people.

The State's evidence, however, showed that, after the initial altercation, a man sucker-punched Shortall who, with his friends, chased this man. A tall, unidentified man, accompanied by defendant, stopped Shortall and challenged him to fight. Defendant stood three feet away from Shortall but did not make any threatening physical or verbal gestures. When Shortall declined the fight, the tall man shoved Shortall with one hand and was, in turn, attacked by some men whom Shortall did not know. Shortall resumed the chase of the man who sucker-punched him, hit him a few times, and knocked him to the ground. When Shortall finished fighting and stood up, defendant struck Shortall with a knife from behind four times. After Shortall turned to face defendant, he cut Shortall twice more. Shortall pushed defendant to the ground and walked away. He saw defendant running away, waving a three- or four-inch blade knife in the air shouting, "This is my equalizer." Shortall and his friends had no contact with defendant before Shortall was stabbed. Concurrently, Carpenter joined Shortall in the chase of the man who sucker-punched Shortall when three neighborhood men, including defendant, kicked and punched him. Baroncelli ran over, grabbed Carpenter, and threw a punch at one of Carpenter's attackers. He turned to run away when defendant cut his face.

Defendant maintains the evidence demonstrates that the university students "were on a rampage" and compels the conclusion that the State failed to disprove an element of self-defense beyond a reasonable doubt. In support, defendant points out that the students were much larger than defendant; Shortall admitted that he and his companions were involved in several fights before defendant cut him; and the cuts suffered by Shortall and Baroncelli were "slashing type cuts" and not stab wounds, consistent with defendant's testimony. Defendant additionally asserts that it makes no difference that Shortall was cut several times. Where self-defense is warranted, the party is not expected to have perfect judgment. (*People v. Shipp* (1977), 52 Ill. App. 3d 470, 476, 367 N.E.2d 966.) Lastly, defendant contends, if he lacked the intent to kill Baroncelli, as the circuit court apparently found when it acquitted him of attempted first degree murder of Baroncelli, then he similarly lacked the intent to kill Shortall.

■ The evidence, when viewed in the light most favorable to the State, negates several of the elements of self-defense. Particularly,

defendant's use of deadly force was unjustified under the circumstances testified to by the State's witnesses. Defendant viciously attacked Shortall with a knife from behind, causing severe injuries to Shortall. Defendant then slashed Baroncelli's face as he was running away from defendant. The cases cited by defendant, *McGrath* (193 Ill. App. 3d 12, 549 N.E.2d 843), *People v. Estes* (1984), 127 Ill. App. 3d 642, 469 N.E.2d 275, *Shipp*, 52 Ill. App. 3d 470, 367 N.E.2d 966, and *People v. Brumbeloe* (1968), 97 Ill. App. 2d 370, 240 N.E.2d 150, are distinguishable and do not support defendant's circumstances here.

From the foregoing, defendant's conviction of attempted first degree murder must be affirmed.

B

Defendant maintains that he reasonably believed the use of deadly force was necessary to prevent the forcible felony of aggravated battery on a public way. He concocts a statutory scheme and concludes: "the net result of this analysis is that a person is justified in using deadly force to prevent the commission of a simple battery if it is about to occur on a public street." Defendant admits he has no authority for this argument, but claims it follows logically from the plain meaning of the following statutes.

The use of deadly force is justified only if a person "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." (Ill. Rev. Stat. 1991, ch. 38, par. 7—1 (now 720 ILCS 5/7—1 (West 1992)).) Without citation, defendant nevertheless contends that aggravated battery is a forcible felony which may or may not involve great bodily harm; and a simple battery (which involves only bodily harm, not great bodily harm), if it occurs on a public way, is elevated to aggravated battery. See Ill. Rev. Stat. 1991, ch. 38, pars. 12—3, 12—4(b)(8) (now 720 ILCS 5/12—3, 12—4(b)(8) (West 1992)).

■ Contrary to defendant's contention, "forcible felony" is defined to include "aggravated battery resulting in great bodily harm or permanent disability or disfigurement." (Ill. Rev. Stat. 1991, ch. 38, par. 2—8 (now 720 ILCS 5/2—8 (West 1992)).) Simple battery upon a public way intentionally was omitted from the definition of forcible felony: "When the legislature designated a subset of aggravated batteries that would justify deadly force, it clearly demonstrated that it did not mean to provide a justification in the case of any battery upon a public way." (Emphasis omitted.) (*People v. Leahy* (1992), 229 Ill. App. 3d 1070, 1075, 595 N.E.2d 198.) Accordingly, defendant's contention fails.

## II

Defendant next asks this court to reduce his conviction of attempted first degree murder to attempted second degree murder or aggravated battery.

Second degree murder is the equivalent of voluntary manslaughter under the prior statute. (Compare 720 ILCS 5/9—2 (West 1992), with Ill. Rev. Stat. 1985, ch. 38, par. 9—2.) Second degree murder occurs when a person commits what would ordinarily amount to first degree murder, but proves that one of two mitigating circumstances is present: (1) imperfect self-defense, *i.e.*, defendant acts in what he or she believes is legal self-defense, but the belief is unreasonable; or (2) defendant acts "under a sudden and intense passion resulting from serious provocation." (Ill. Rev. Stat. 1991, ch. 38, par. 9—2 (now 720 ILCS 5/9—2 (West 1992)).) Defendant advances both imperfect self-defense and the mutual quarrel or combat category of serious provocation. See *People v. Doss* (1991), 214 Ill. App. 3d 1051, 1056, 574 N.E.2d 806.

Should the offense of attempted second degree murder be recognized in Illinois? Under the prior voluntary manslaughter statute, it was clear that the crime of attempted voluntary manslaughter did not exist. Our supreme court held that the crime of attempted voluntary manslaughter based on imperfect self-defense did not exist because the compound elements of attempt and voluntary manslaughter based on unreasonable self-defense are mutually exclusive, *i.e.*, "it is impossible to *intend* an *unreasonable* belief." (Emphasis added.) (*People v. Reagan* (1983), 99 Ill. 2d 238, 239-41, 457 N.E.2d 1260.) Similarly, it was held that the offense of voluntary manslaughter based on a sudden and intense passion did not exist because it was impossible to intend a sudden and intense passion. *People v. Weeks* (1967), 86 Ill. App. 2d 480, 485, 230 N.E.2d 12.

Since the present second degree murder statute replaced the prior voluntary manslaughter statute, the Illinois appellate courts are divided on whether to recognize the offense of attempted second degree murder. The third district has recognized the offense of attempted second degree murder based upon a sudden and intense passion resulting from serious provocation. (*People v. Moore* (3d Dist. 1990), 204 Ill. App. 3d 694, 698, 562 N.E.2d 215.) The second district, following *Moore*, recently recognized the offense of attempted second degree murder based upon imperfect self-defense. (*People v. Austin* (2d Dist. 1991), 215 Ill. App. 3d 323, 333, 574 N.E.2d 1297 (a special concurrence in the result asserted that *Reagan* is still decisive); see *People v. Turcios* (2d Dist. 1992), 228 Ill. App. 3d 583, 601, 593 N.E.2d 907 (following *Austin*).) Both *Moore* and *Austin* justified their result

by determining that the new second degree murder statute had substantively altered the voluntary manslaughter statute, because the intent element is unrelated to the mitigating factors of unreasonable belief or provocation. *Austin*, 215 Ill. App. 3d at 333; *Moore*, 204 Ill. App. 3d at 698.

In contrast, the third and sixth divisions of the first district have held that the crime of attempted second degree murder does not exist; they followed the reasoning in *Reagan* and were unpersuaded that the new second degree murder statute changed its result. *People v. Cruz* (1st Dist., 6th Div. 1993), 248 Ill. App. 3d 473, 477, 618 N.E.2d 591, *appeal allowed* (1993), 152 Ill. 2d 566; *People v. Lopez* (1st Dist., 3d Div. 1993), 245 Ill. App. 3d 41, 44, 614 N.E.2d 329, *appeal allowed* (1993), 152 Ill. 2d 571; *People v. Aliwoli* (1st Dist., 3d Div. 1992), 238 Ill. App. 3d 602, 621-23, 606 N.E.2d 347 (setting forth the opposing views of commentators); *People v. Williams* (1st Dist., 3d Div. 1991), 220 Ill. App. 3d 460, 465, 581 N.E.2d 113; see also *People v. Jones* (1991), 234 Cal. App. 3d 1303, 286 Cal. Rptr. 163 (no offense of attempted second degree murder).

Defendant contends that the reasoning in *Reagan* is flawed, setting forth the same argument which the *Reagan* court rejected: logic requires that if a defendant's act would be voluntary manslaughter/second degree murder if the victim dies, then defendant should be convicted of attempted voluntary manslaughter/ attempted second degree murder if the victim lives. Defendant further maintains that, in any event, the *Reagan* analysis no longer applies under the present second degree murder statute.

█ Were this court to recognize the offense of attempted second degree murder, defendant contends his attempted first degree murder conviction should be reduced to attempted second degree murder. Under Supreme Court Rule 615(b)(3), a reviewing court may reduce the degree of the offense of which an appellant was convicted. (134 Ill. 2d R. 615(b)(3).) This power may be utilized only where a lesser-included offense is involved and must be exercised with extreme caution and in rare instances. (*People v. Williams* (1991), 222 Ill. App. 3d 129, 138, 582 N.E.2d 1158.) Having already determined that defendant was proved guilty of attempted first degree murder beyond a reasonable doubt, the invitation to reduce the degree of the offense to attempted second degree murder must be declined. (See *People v. Kick* (1991), 216 Ill. App. 3d 787, 793, 576 N.E.2d 395.) As a result, we leave for another day the issue of whether to recognize the offense of attempted second degree murder. Defendant's conviction of attempted first degree murder is affirmed.

### III

Since this court has declined to reduce defendant's conviction from attempted first degree murder to attempted second degree murder or to aggravated battery, there is no basis upon which to remand for resentencing.

Based upon the foregoing discussion, the decision of the circuit court must be affirmed.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.