2020 IL App (1st) 181612-U

No. 1-18-1612

Order filed October 23, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 11828 |
| | ) | |
| DAVID JONES, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's conviction for aggravated battery is affirmed because a rational factfinder could find that the evidence negated the defendant's self-defense claim.

¶ 2     Following a bench trial, the circuit court found defendant David Jones guilty of one count of aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2016)) and one count of aggravated battery causing great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2016)). The court merged the latter count into the former, and sentenced defendant to five years'

imprisonment. He appeals, arguing that the State's evidence was insufficient to demonstrate he did not act in self-defense. We affirm.

¶ 3    Defendant and his brother Gable Jones were charged in a 14-count indictment arising from an incident on July 26, 2017.[1] Ten counts, only against Gable, alleged various firearm offenses. The remaining counts, against defendant and Gable, alleged aggravated battery with a deadly weapon (count X), and aggravated battery causing great bodily harm (count XI), permanent disability (count XII), and permanent disfigurement (count XIII). The cause proceeded to a joint bench trial.

¶ 4    At trial, Lance Hollis testified that he had known defendant and Gable for 30 years. He identified them in court. On July 26, 2017, around midnight, Hollis walked to the corner of 67th Street and Langley Avenue in Chicago to go to a liquor store. He carried a metal pipe that he found in an alley. Later, defendant and Gable arrived at the corner, and Gable acted aggressively towards Hollis. Gable and Hollis started "tussling," and wrestled on the ground for a "few seconds" until defendant pulled Hollis off of Gable. Hollis then heard a gunshot and ran around the corner. He did not see defendant or Gable with a firearm.

¶ 5    While running, Hollis fell and somebody grabbed him, but nobody hit him because he "got up" and ran again. Hollis then ran around a vehicle and into Gable, and the two "tussle[ed]." He did not know if Gable punched him or if someone hit him with the metal pipe at this point.

¶ 6    The police arrived and Hollis was transported to a hospital, where he received treatment for fractured ribs and a cut to his head that required nine staples. At the hospital, Hollis spoke to a detective and gave a videotaped statement regarding the incident.

---

[1] Because defendant and Gable Jones have the same last name, we refer to Gable by his first name. He was represented by different counsel at trial and is not a party to this appeal.

¶ 7    The prosecutor asked Hollis whether he made certain comments in the videotaped statement, including that (1) at the beginning of the incident, Gable lunged towards Hollis and appeared to have a firearm; (2) Gable discharged a firearm in the air; (3) Hollis fled following the gunshot, stumbled, and Gable and defendant then attacked him; and (4) at some point, defendant removed the metal pipe from Hollis's pants and hit him with it. Hollis denied making these statements, but affirmed stating that he fell to the ground with Gable, ran when he heard a gunshot, picked up the metal pipe because he was a scrapper, and did not know how many times he was hit with the pipe. Hollis acknowledged seeing a video of the incident and that it was accurate.

¶ 8    The parties stipulated that cameras in the area where the incident occurred operated properly on July 26, 2017, and that footage from the cameras depicted the incident. The State then published the footage, People's Exhibit No. 1, stopping periodically to question Hollis about it. In the video, which is included in the record on appeal, Hollis identified himself and another person, Lenny-O. At the 23:37:25 mark, he identified himself on the ground with Gable. He could not tell if defendant was in the frame at this point. At the 23:37:50 mark, Hollis testified that he could not determine if defendant was the man depicted holding a pipe.

¶ 9    On cross-examination, Hollis agreed that after he and Gable wrestled on the ground, Gable "got off" of Hollis, allowing him to run towards the store. He did not know if anyone followed him.

¶ 10    Officer John Peulecke testified that on July 26, 2017, he was driving near 67th and Langley with Officers Partiece Walker and Mendez[2] when he heard a gunshot. He drove toward

---

[2] Mendez's first name does not appear in the report of proceedings.

the sound, stopped at the corner, and exited the vehicle. He saw a man, whom he identified in court as defendant, hit another man with a metal pipe. Peulecke arrested defendant.

¶ 11    On further questioning from the court and counsel, Peulecke agreed that defendant was not holding the pipe when Peulecke arrived at the scene. Peulecke stated that he saw defendant swing a pipe at a man on the ground two to three times, then the two men "hit the ground" with defendant "on top of the victim." Peulecke testified that the victim was bleeding from his face and that 10 to 15 seconds passed between the gunshot and his arrival at the intersection.

¶ 12    Walker testified that he observed a man running following the gunshot. Walker pursued the man, whom he identified as Gable in court, for 30 seconds before stopping him in an alley. Gable dropped an object during the pursuit. After detaining Gable, Walker retraced the path of his pursuit and recovered a firearm.

¶ 13    On questioning from the court, Walker testified that People's Exhibit No. 1 depicted Gable discarding the item. He recovered the firearm "no longer than a minute" after he arrested Gable. There were other officers in the area in which Walker recovered the firearm.

¶ 14    Detective Robert Corfield testified that he spoke with Hollis in the hospital, and Hollis agreed to give a videotaped statement. The State published the statement, marked as People's Exhibit No. 2. In the video, which is included in the record on appeal, Hollis states that on July 26, 2017, he was walking towards a liquor store near 67th and Langley. On the way, he picked up a steel pipe in an alley and placed it in his pants. As he approached the store, he saw his friend Lenny-O standing near Gable and defendant, whom Hollis felt were acting aggressively towards Lenny-O. As Hollis approached, Gable crossed the street, then returned with a firearm in his hand and approached Hollis. Hollis told Gable to leave Lenny-O alone. Gable pushed Hollis, and

the two went to the ground. Defendant was near the corner at this point. Hollis then heard Gable discharge the firearm and "tried to get away" from Gable.

¶ 15    Hollis ran around the corner, then tripped and fell, at which point defendant swung the pipe at Hollis. He did not know how defendant procured the pipe. defendant hit Hollis in the head and in the back with the pipe. At some point Hollis ran away again, but Gable and defendant got behind him, and finally he and defendant wrestled each other to the ground before the police arrived and arrested defendant. Hollis identified Gable and defendant in photographs, which he signed and dated.

¶ 16    This court has reviewed People's Exhibit No. 1. The individuals depicted therein can be discerned based on Hollis's videotaped statement. There is no audio component. The video depicts a group of people standing near a vehicle. Lenny-O holds a long, thin object in his hands. Hollis and Gable begin a physical altercation and go to the ground, and defendant pulls them apart. Gable then points towards the air while appearing to hold something in his hand. The crowd disperses immediately following this action.

¶ 17    Hollis stands and starts to run. Gable and defendant chase Hollis for five seconds, during which time the video switches to another camera. Hollis trips, gets up, and runs behind a vehicle. An object resembling a metal pipe protrudes from Hollis's pants. Moments later, Gable and Hollis begin another physical altercation, at which point defendant comes from behind Hollis, takes the object from Hollis's pants, and swings it at Hollis. Hollis ducks the first swing and tries to run, but trips into the street. Defendant then hits Hollis in the back with the object. Hollis gets up, and he and defendant circle each other, with defendant swinging the object three to four times and appearing to contact Hollis. The two then grapple and go to the ground, and defendant

loses the object. Defendant, now on top of Hollis, starts punching him, and continues punching him while a police officer approaches and eventually ends the incident.

¶ 18    During closing arguments, defense counsel stated that Hollis and Lenny-O had weapons and Gable and Hollis engaged in "mutual combat," leading to defendant pulling them apart, then "disarm[ing]" Hollis and swinging the pipe at him. Counsel argued that defendant had the right to use this force against Hollis because Hollis was the "original aggressor" and did not retreat from the conflict.

¶ 19    The prosecutor argued that Hollis fled from defendant and Gable after Hollis heard the gunshot. Defendant and Gable then pursued Hollis, "circle[d]" him after he tripped, and knocked him to the ground, at which point defendant took the pipe from Hollis and struck him with it. The prosecutor contended that Hollis "certainly abandoned" the fight, and only then did defendant attack Hollis with a "deadly weapon."

¶ 20    The court viewed People's Exhibit No. 1 again, and then found defendant guilty of aggravated battery with a deadly weapon (count X) and aggravated battery causing great bodily harm (count XI). The court found defendant not guilty of counts XII and XIII. In so finding, the court stated that a person's right to self-defense is not "unequivocal," and Hollis withdrew from the initial physical contact. The court acknowledged that Hollis's testimony conflicted with his videotaped statement, and stated that it relied "very heavily" on the video of the incident. The court concluded that if "there is any question whatsoever whether the victim was retreating *** it is made clear by the video."

¶ 21    The court denied defendant's motion for a new trial. After a hearing, the court merged count XI into count X, sentenced defendant to five years' imprisonment for aggravated battery

with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2016)), and denied his motion to reconsider sentence.

¶ 22     On appeal, defendant argues that the State's evidence was insufficient to refute the elements of self-defense because Hollis was the initial aggressor, and the entire incident was part of a single physical altercation that Hollis initiated.

¶ 23     When reviewing the sufficiency of the evidence, the reviewing court construes the evidence in the light most favorable to the State and determines whether any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. The court on review is not to retry the defendant. *Id.* Instead, it is the responsibility of the factfinder to weigh the evidence, draw reasonable inferences therefrom, and assess the credibility of the witnesses. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). Accordingly, the reviewing court will not substitute its judgment for that of the factfinder regarding the weight of the evidence and witness credibility. *People v. Hardman*, 2017 IL 121453, ¶ 37. The trial result should only be reversed where the evidence was so "unreasonable, improbable, or so unsatisfactory" that it creates reasonable doubt of the defendant's guilt. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 24     Relevant here, a person commits aggravated battery with a deadly weapon when, in committing a battery, he uses a deadly weapon other than by discharging a firearm. 720 ILCS 5/12-3.05(f)(1) (West 2016). Defendant does not challenge the sufficiency of the evidence as to the elements of the offense, but rather, claims that the State's evidence was insufficient to refute his affirmative defense of self-defense.

¶ 25 A defendant must present evidence at trial to establish an affirmative defense unless the State's evidence raises the issue. See *People v. Everette*, 141 Ill. 2d 147, 157 (1990). Once a defendant raises an affirmative defense, the State may refute the affirmative defense by proof beyond a reasonable doubt that the defendant has not established any element of the defense. *Gray*, 2017 IL 120958, ¶ 50.

¶ 26 The Illinois self-defense statute states that a "person is justified in the use of force *** when and to the extent he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." 720 ILCS 5/7-1 (West 2016). To establish self-defense, a defendant must show that (1) force was threatened against him, (2) he was not the aggressor, (3) an imminent danger of harm existed, (4) the threatened force was unlawful, (5) the defendant subjectively believed the use of force was necessary, and (6) that belief was objectively reasonable. See *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). "If the State negates any one of these elements, the defendant's claim of self-defense necessarily fails." *Gray*, 2017 IL 120958, ¶ 50. Moreover, if an initial aggressor retreats and withdraws from the confrontation he initiated, a person is not acting in self-defense if he then pursues and injures that initial aggressor. *People v. Guja*, 2016 IL App (1st) 140046, ¶ 54.

¶ 27 The factfinder "is not obligated to accept a defendant's claim of self-defense; rather, in weighing the evidence, the trier of fact must consider the probability or improbability of the testimony, the circumstances surrounding" the incident, and "the testimony of other witnesses." *People v. Rodriguez*, 336 Ill. App. 3d 1, 15 (2002).

¶ 28 The record shows that defendant pulled Gable and Hollis apart as the two wrestled on the ground. Gable then discharged a firearm into the air. Upon hearing the gunshot, Hollis ran away,

and defendant and Gable pursued him. Hollis tripped multiple times as he fled, allowing defendant and Gable to catch him. During the ensuing altercation, defendant pulled a metal pipe from Hollis's pants and swung it at him multiple times. The video evidence, Hollis's videotaped statement, and the evidence regarding Hollis's injuries show that defendant struck Hollis with the pipe at least twice, including once in the head. Hollis fled again, but defendant pursued and engaged Hollis, and the two went to the ground. Defendant lost the pipe at this point, but landed on top of Hollis, and punched him as police approached.

¶ 29    We find that on this record, the trial court could rationally conclude that the State's evidence refuted defendant's claim of self-defense. This court has reviewed the same video on which the trial court based its ruling, and a reasonable factfinder could have interpreted the video as the trial court did: that it demonstrates Hollis retreated from the altercation, and only after this did defendant pursue Hollis and strike him with a metal pipe. Even if Hollis were the initial aggressor against Gable, at the time Hollis fled he no longer posed a threat to defendant or his brother, thus making defendant and Gable the aggressors in a new physical altercation. This negates the first two elements of self-defense. Similarly, respecting the third and fourth elements, the evidence shows that because Hollis was attempting to flee, he posed no threat to defendant or Gable such that defendant's use of force was necessary to defend himself or another. *See Guja*, 2016 IL App (1st) 140046, ¶ 54; see also *People v. Huddleston*, 176 Ill. App. 3d 18, 34 (1988) ("The right of self-defense does not *** allow the pursuit *** of an original aggressor after the aggressor abandons the quarrel."). Finally, even if defendant subjectively believed Hollis posed a threat while he retreated such that defendant needed to use force against him, a rational factfinder could conclude that this belief was objectively unreasonable based on the video of the incident.

Thus, the trial court could reasonably conclude that defendant's affirmative defense failed because the State's evidence refuted five of the six elements of self-defense. See *Gray*, 2017 IL 120958, ¶ 50.

¶ 30 Defendant argues that Hollis was the initial aggressor, and any subsequent physical altercation between himself and Hollis prior to defendant's arrest was part of the same incident Hollis initiated. The trial court here, however, explicitly weighed the video of the incident above the other evidence and concluded that Hollis retreated from the initial fight. We find that this interpretation was not so unreasonable that reversal is required. Defendant's argument amounts to a request that we reweigh the evidence and substitute our judgment for that of the trial court, which we may not do. See *Hardman*, 2017 IL 121453, ¶ 37.

¶ 31 Finally, defendant points to *People v. Rodriguez*, 258 Ill. App. 3d 579 (1994), for the proposition that a defendant need not show perfect judgment in using self-defense in a situation where it is warranted, and thus, even if defendant arguably overreacted by hitting Hollis with a metal pipe, this does not defeat the affirmative defense. See *Rodriguez*, 258 Ill. App. 3d at 584. This principal is inapposite, however, because the factfinder determined that self-defense was not warranted once Hollis retreated, a conclusion that was supported by the record.

¶ 32 In sum, the circuit court rationally found that the State refuted defendant's affirmative defense beyond a reasonable doubt, and accordingly, we affirm his conviction.

¶ 33 Affirmed.