2020 IL App (4th) 180588

NO. 4-18-0588

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 27, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MARC ACKLIN, | ) | No. 16CF241 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a bench trial in March 2018, the trial court found defendant, Marc

Acklin, guilty of residential burglary (720 ILCS 5/19-3(a) (West 2016)), a Class 1 felony, and

theft (720 ILCS 5/16-1(a)(1) (West 2016)), a Class A misdemeanor. In June 2018, pursuant to an

agreement between the parties, the court sentenced defendant to five years in the Illinois

Department of Corrections (DOC) followed by two years of mandatory supervised release.

Defendant filed two posttrial motions—a motion to reconsider the sentence and a motion for a

new trial—which the court denied following a hearing in August 2018.

¶ 2        On appeal, defendant argues the State failed to prove him guilty beyond a

reasonable doubt of residential burglary because it did not show he entered the house with intent

to commit a theft or felony. We agree.

¶ 3                                I. BACKGROUND

¶ 4		In July 2016, the State charged defendant with two counts: residential burglary (720 ILCS 5/19-3(a) (West 2016)), a Class 1 felony, and theft (720 ILCS 5/16-1(a)(1) (West 2016)), a Class A misdemeanor. After defendant waived his jury trial right, the matter proceeded to a bench trial in March 2018.

¶ 5		The State called three witnesses: the two victims, Giovanny Suarez and Vincent Elias, along with Lieutenant Michael Smudzinski of the La Salle Police Department. Suarez testified he went to a party with defendant and B.B. at approximately 10 p.m. on July 23, 2016. Suarez explained he met defendant that day and was not "super familiar" with him. Nevertheless, after returning from the party at "around four or five in the morning" on July 24, Suarez allowed defendant and B.B. to stay at his house because they were all drunk. Suarez testified he permitted defendant and B.B. to sleep in his bedroom while he slept on the couch. Suarez awoke at 8 a.m., feeling confused about what happened the prior evening. B.B. and defendant awoke shortly afterward, and Suarez asked them if they had a ride home because his boss was on the way to pick him up for work at 9 a.m. They said they had a ride coming for them. Suarez testified the three sat in the living room as they waited for their rides.

¶ 6		Suarez testified his boss arrived ahead of defendant's ride. Before leaving, Suarez locked his and his roommate's bedroom doors and told B.B. and defendant they could wait in the living room for their ride. Suarez testified he returned home at 11 p.m. and found his bedroom door open, and he noticed some of his property was gone, including a watch, a speaker, video games, a cell phone, and other electronics. Suarez denied giving defendant or B.B. permission to enter his room or take his property after he left for work.

¶ 7		Elias testified he lived at 913 E. 12th Street in Streator, Illinois, with Suarez, on the date in question, July 24, 2016. He explained he woke up early that morning because he had

to leave for work at 6:30 a.m. He said he did not go to the party the night before. Elias testified he woke up and saw people sleeping in Suarez's room and another person sleeping on the couch, which did not shock him. He testified he closed his bedroom door before he left for work. When Elias returned home from work at approximately 4:30 p.m., he found the front door open, which he described as unusual. Elias testified he entered the home cautiously and saw "both [his] room and [Suarez's] room doors were open and broke into." When Elias noticed some of his belongings were missing, he called the police. He reported his phone, electric guitar, backpacks, and television had been taken. He testified those items were in his room when he left that morning for work. Elias testified he did not know defendant and never met him. He acknowledged he neither invited defendant into the home nor asked him to leave the house. Likewise, he did not give defendant permission to take his property. Elias testified he did not know who removed his belongings from his room that day.

¶ 8        Lieutenant Smudzinski, a City of La Salle police officer, testified he assisted in investigating this Livingston County case. He interviewed defendant about multiple burglaries in La Salle and Livingston Counties. Defendant gave the following written statement to Lieutenant Smudzinski regarding this burglary:

> "I was driven to a party with Ben and Bobby. The party was described as a 'Project X' party. There were tons of people, everyone was drunk. Ben had told me that the people who were hosting the party had done him wrong in the past. We woke up and he asked me to help him carry things out of the house. We took items that did not belong to us and left the house. We brought it back to the [apartment]. My brother Larry was outside when we brought it. It was 2 T.V.'s a guitar, speakers, amplifier, and bags. I told my friend Kevin I got it from Chicago

- 3 -

from my mom. I had some of the items at the [apartment]. We also pushed the door in to get the other items."

¶ 9 Defendant testified as the lone witness in his defense. He explained he stayed the night at Suarez and Elias's home on the night of July 23 and 24 because his friend B.B. knew them. He said he did not know either Suarez or Elias—and he had never seen Elias before he testified in court that day. Defendant testified no one asked him to leave the house and he was still asleep when Elias and Suarez left the home. Defendant admitted helping B.B. remove property from the house, once the two woke up in the morning.

¶ 10 The State's closing argument emphasized the limited authority doctrine outlined in *People v. Wilson*, 155 Ill. 2d 374, 614 N.E.2d 1227 (1993), which provides that defendant had limited authority to be in Suarez's home but taking property from the house negated that authority. By contrast, the defense's closing argument relied upon *People v. Bush*, 157 Ill. 2d 248, 623 N.E.2d 1361 (1993), which provides that a defendant who entered a dwelling with authority and without intent to commit a felony cannot be convicted of residential burglary. The trial court rendered its decision on the record, observing, "this [case] almost boils down more to a legal argument than a factual argument, although some facts are in dispute based upon the Defendant testifying." The trial court found "Mr. Suarez was much more credible" than defendant because defendant "failed to explain why his testimony today is contrary to what he told the lieutenant at the time of his interview." The trial court found defendant guilty on both counts, stating:

> "I do think the State's argument is correct and the correct law is that there is this
> limited authority, particularly when you look at the actions that were taken by Mr.
> Suarez to assure that the property at least in the bedrooms was secure by locking

those doors. And the Defendant admits to taking that. So they had no permission to take that property at all; and that's pretty clear by the testimony from both Mr. Suarez and Mr. Elias; and [defendant] admits taking it."

The trial court ordered a presentence investigation report and set the matter for sentencing.

¶ 11 At the sentencing hearing in June 2018, the parties informed the court they agreed on a sentence of 5 years in DOC, with defendant receiving credit for 259 days served. The court sentenced defendant according to the agreement and recommended defendant for placement in a substance abuse program. Defendant filed two posttrial motions seeking reconsideration of the sentence and a new trial, but the trial court denied them both following an August 2018 hearing.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 Defendant challenges his conviction for residential burglary alone, arguing the State failed to prove him guilty beyond a reasonable doubt. We agree and reverse that conviction. Since defendant does not challenge his misdemeanor theft conviction, we will not address it.

¶ 15 "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278, 818 N.E.2d 304, 307 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a defendant appeals his convictions, contending the State failed to satisfy this burden of proof, a reviewing court will not retry the defendant but asks " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt.' " (Emphasis in original.) *Cunningham*, 212 Ill. 2d at 278 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). But in applying this standard, we will neither reweigh evidence nor judge witness credibility; rather, we defer to the fact finder's credibility determinations. See *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 369 (1999).

¶ 16 A person can commit residential burglary in one of two ways. The statute specifically provides:

> "A person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a) (West 2016).

Here, defendant was charged with the former: "knowingly and without authority entered into" the home "with the intent to commit therein a theft."

¶ 17 Based on how the charging instrument described the count, in order to prove defendant guilty beyond a reasonable doubt of residential burglary, the State had to establish two elements: (1) defendant knowingly and without authority *entered* the dwelling at 913 E. 12th Street in Streator, Illinois, and (2) defendant did so with intent to commit a theft or felony therein. See *Wilson*, 155 Ill. 2d at 380 ("The crime of residential burglary requires a person to knowingly and without authority enter the dwelling of another with the intent to commit a felony or theft therein." (citing Ill. Rev. Stat. 1989, ch. 38, ¶ 19-3)). Defendant admits the theft and that he formed the intent to commit the theft after he was given authority to enter and to remain, essentially conceding in his reply brief he could have been convicted of the second form of residential burglary—"remains within" the home, "or any part thereof, with the intent to commit therein a theft." Defendant, nevertheless, challenges the sufficiency of the State's evidence as to

- 6 -

both elements in the charging information, arguing he had authority to enter the dwelling and he did not intend to commit a felony when he entered. We take each element in turn.

¶ 18                                A. Without Authority to Enter the Dwelling

¶ 19          The parties agree Suarez gave defendant permission to enter the dwelling. Indeed, Suarez, whom the trial court found credible, testified he allowed defendant and B.B. to sleep in his bedroom when they returned to the house from the party and he allowed them to remain in the living room to wait for their rides the next morning. But by invoking the limited authority doctrine, the State argued defendant's act of taking the property from the house obviated Suarez's authorization for defendant to be in the dwelling—thereby rendering defendant's entry into the home without authority. In *Bush*, our supreme court described the limited authority doctrine as, "when a defendant comes to a private residence and is invited in by the occupant, the authorization to enter is limited and *** criminal actions exceed this limited authority." *Bush*, 157 Ill. 2d at 253; see also *People v. Priest*, 297 Ill. App. 3d 797, 805, 698 N.E.2d 223, 229 (1998) ("The limited authority doctrine provides that when a defendant is invited into a private residence by an occupant, the authorization to enter is limited."). In other words, the " 'consent given for a defendant's entry is vitiated by criminal actions engaged in by the defendant after entering, thus making his entry unauthorized.' " *People v. Peeples*, 155 Ill. 2d 422, 487-88, 616 N.E.2d 294, 325 (1993) (quoting *People v. Sanders*, 212 Ill. App. 3d 773, 778, 571 N.E.2d 836, 839 (1991)). There is no dispute Suarez invited defendant into the dwelling to sleep off a night's partying and allowed defendant to remain there when he left for work in the morning. Furthermore, there is no dispute (he admitted it) defendant unlawfully removed Elias's and Suarez's property from the dwelling after they left for work. Defendant's criminal act, therefore, negated the authorization Suarez gave him to enter the home, meaning he entered without

- 7 -

authority. But authority is only one part of residential burglary and the limited authority doctrine—there must still be criminal intent. To be sure, the two elements go hand-in-hand because the limited authority doctrine cannot fully apply to make an authorized entry unauthorized if the defendant did not possess the requisite intent at entry. See *Bush*, 157 Ill. 2d at 254 (explaining "the [ultimate] determination of whether an entry is unauthorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted"). Consequently, we turn now to defendant's intent when he entered the dwelling.

¶ 20                    B. Intent to Commit a Theft or Felony in the Dwelling

¶ 21         The State may prove a defendant's intent through circumstantial evidence and the reasonable inferences arising from such evidence. *People v. Snow*, 124 Ill. App. 3d 955, 961, 464 N.E.2d 1262, 1266 (1984) ("As evidence of intent is usually not direct, it may be proved circumstantially by inferences reasonably drawn from the circumstances of defendant's conduct."); see also *People v. Hopkins*, 229 Ill. App. 3d 665, 672, 593 N.E.2d 1028, 1032 (1992) ("The State can prove a defendant's intent by inferences drawn from his conduct and from surrounding circumstances."). When considering a defendant's intent, "relevant circumstances *** include the time, place, and manner of entry into the premises, the defendant's activity within the premises, and any alternative explanations which may explain his presence." *Hopkins*, 229 Ill. App. 3d at 672.

¶ 22         None of the trial testimony provided direct or circumstantial evidence of defendant's intent when he entered the dwelling. Suarez's testimony, which the trial court credited, did not touch on defendant's intent when entering the home. He testified he allowed him to sleep there when they were all drunk after a night of partying. He then testified he allowed him to stay in the home to wait for his ride the next morning. Suarez's explanations for

why defendant was in his home do not induce a reasonable inference defendant entered the dwelling with intent to commit a theft or felony therein. Likewise, Elias's testimony did not raise any reasonable inferences that defendant intended to commit theft or a felony when he entered the home. Elias woke up with defendant already in the home—he did not know defendant and never talked to him. Lieutenant Smudzinski's testimony, however, did touch upon defendant's intent, if even obliquely. Lieutenant Smudzinski recounted defendant's interview where he admitted,

> "during or after the party [B.B.] had advised him that the dudes having the party did him wrong; and they decided to remove items from the house And at one point when nobody, when the—they stayed there overnight; and at one point when everybody was gone *** they removed some items from this house, also removing items from two locked bedrooms in the house."

Lieutenant Smudzinski's testimony reflected defendant's written statement, where he wrote:

> "I was driven to a party with Ben and Bobby. The party was described as a 'Project X' party. There were tons of people, everyone was drunk. Ben had told me that the people who were hosting the party had done him wrong in the past. We woke up and he asked me to help him carry things out of the house."

While these statements may raise reasonable inferences as to defendant's intent to commit theft at the party and the next morning when he woke up at Suarez's and Elias's home, they provide nothing as to his intent when he *entered* Suarez's and Elias's home. We could infer from these statements that defendant and B.B. intended to steal from the hosts of the party because they did B.B. wrong in the past. But Suarez and Elias did not host the party. Suarez testified the group (him, defendant, and B.B.) left his home to go to the party and returned to his home afterwards,

meaning the party was not at Suarez's house. We can also infer from defendant's statements that he developed intent to steal when he woke-up—*after* he entered the dwelling and while he remained therein. Taken together, none of the testimony raised the reasonable inference defendant intended to commit a theft or felony when he *entered* Suarez's and Elias's home at 4 a.m. on July 24, 2016.

¶ 23        Nor do the circumstances surrounding his entry into the dwelling raise a reasonable inference he entered with intent to commit a theft or felony. Although defendant entered the home in the early morning hours when it was presumably still dark, he did so at Suarez's invitation. He was drunk and went to bed. He did not wait until his host passed out on the couch to get up and remove property from the home. Instead, he slept several hours, woke up, and removed the property in daylight. These circumstances (the time, place, manner of entry, and defendant's activity in the home) suggest defendant entered the dwelling with the intent to sleep off a night's partying, but he and B.B. decided to commit theft when they found themselves alone in the home after Suarez and Elias left for work. Even "when viewing the evidence in the light most favorable to the prosecution" and deferring to the trial court's determination that Suarez and not defendant provided credible testimony, we cannot conclude a rational fact finder could find the State proved the second essential element of residential burglary beyond a reasonable doubt—*i.e.*, defendant *entered* the dwelling with intent to commit a theft or felony therein. See *Hopkins*, 229 Ill. App. 3d at 672. Had the State charged defendant with remaining burglary (he knowingly and without authority remained in the dwelling with intent to commit a theft or felony therein), it would have proved criminal intent beyond a reasonable doubt based on these facts; defendant as much as says so in his reply brief. See *People v. Boose*, 139 Ill. App. 3d 471, 474, 487 N.E.2d 1088, 1091 (1985) ("A criminal intent formulated after a lawful entry will

- 10 -

satisfy the offense[ ] of *** burglary by illegally remaining," but "[i]t will not *** satisfy the offense of burglary by illegal entry."). But the State did not charge "remaining" burglary. The State instead charged defendant with burglary by unauthorized entry, which it did not prove beyond a reasonable doubt.

¶ 24　　　　Though defendant's act of removing Suarez's and Elias's property from their dwelling rendered his entry into the dwelling without authority, *i.e.*, defendant's criminal actions negated Suarez's consent to enter the dwelling, the limited authority doctrine (and residential burglary's elements) still required the State to prove beyond a reasonable doubt defendant's intent to commit a theft or felony *at the time of entry*. Neither direct nor circumstantial evidence allowed a rational fact finder to reasonably infer defendant possessed the requisite criminal intent at the time he entered Suarez's and Elias's home. The limited authority doctrine, therefore, cannot apply here. Since no evidence established defendant's intent beyond a reasonable doubt, the State failed to meet its burden on the residential burglary count.

¶ 25　　　　　　　　　　　III. CONCLUSION

¶ 26　　　　For the reasons stated, we reverse the trial court's judgment on the residential burglary count. Since defendant did not challenge the misdemeanor theft conviction, it remains.

¶ 27　　　　Affirmed in part and reversed in part.

**No. 4-18-0588**

| | |
|---|---|
| **Cite as:** | *People v. Acklin*, 2020 IL App (4th) 180588 |
| **Decision Under Review:** | Appeal from the Circuit Court of Livingston County, No. 16-CF-241; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Sarah Inskeep, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Randy Yedinak, State's Attorney, of Pontiac (Patrick Delfino, David J. Robinson, and Rosario David Escalera Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |